NEWTON CENTRE TRUST COMPANY *vs.* SUSAN M. STUART & another.

SAME *vs.* WILLOUGHBY H. STUART & another.

Suffolk.    January 15, 1909. — February 26, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Evidence,* Of handwriting, Relevancy. *Estoppel.*

In this Commonwealth a standard of handwriting cannot be proved by the opinions of witnesses, but it may be established, not only by the testimony of a person who saw the words written, but also by other evidence direct or circumstantial.

Upon the issue of the genuineness of a signature, under ordinary circumstances signatures which are not the subject of litigation in other suits and about which there is no dispute can be procured as standards, and under such circumstances *it is within the discretionary power of a presiding judge to refuse to receive* evidence as to signatures offered as standards, which are in litigation or in dispute, and to require the party seeking to establish the standard to produce signatures not open to these objections, but where a plaintiff suing on a promissory note contends that the signature of the indorsement, although not the usual signature of the defendant, is a signature which was adopted by the defendant in a certain series of transactions of which this was one, and it appears that all of the rest of these transactions are subjects of litigation in other actions, it is necessary to the plaintiff's case to allow him to prove as a standard a signature

of the defendant which is one of the series in litigation, and a refusal to allow him to do so is error, an exception to which must be sustained.

In an action against a married woman on a promissory note, in which she denied the genuineness of the signature on the note purporting to be hers and contended that it was written by her husband without her authority, it was admitted that the signature in question was not in the defendant's usual handwriting, but the plaintiff contended that the signature was one adopted by the defendant in a series of transactions relating to borrowing money, which she and her husband wished to conceal from her father, and the plaintiff offered to show that the indorsee of the note, who sold it to the plaintiff, before the plaintiff bought the note, sent his clerk to the defendant with other instruments which were parts of the same transaction and bore similar signatures, and that the defendant told the clerk of the indorsee that the signatures on these other instruments were hers, whereupon the plaintiff, relying on the genuineness of these other signatures of the defendant and on the statement of the clerk of the indorsee, bought the note in suit from the indorsee. The evidence was excluded. The plaintiff contended that on the facts which he thus offered to prove the defendant was estopped to deny that the signature on the note in suit was hers. *Held*, that, there being no offer to prove that the statement made by the defendant to the clerk of the indorsee, acknowledging her signature on the other instruments, was intended by her to be acted upon by the plaintiff in purchasing the note in suit from the indorsee, the evidence offered was not sufficient to establish an estoppel.

In an action against a married woman on a promissory note, in which she denied the genuineness of the signature on the note purporting to be hers and contended that it was written by her husband without her authority, the plaintiff contended that the signature was one adopted by the defendant in a series of transactions relating to borrowing money, which she and her husband wished to conceal from her father. As evidence that the defendant's husband was her general agent with authority to sign the note in suit, the plaintiff offered to prove that the defendant's father had arranged to have the dividends on certain shares of stock owned by the defendant come to him to make sure that she had not sold the shares, that she did sell them and that she and her husband, to prevent the discovery of this by her father, just before each dividend was declared bought on margin the number of shares of this stock formerly owned by her and sold them immediately afterwards, giving instructions to have the dividends sent to her father who then handed them to her. This evidence was excluded. *Held*, that its exclusion was proper, as it did not tend to show that the defendant's husband was authorized to sign in her name the note sued upon.

LORING, J.    These two actions were tried together.

The declaration in the first action contained two counts. The first count was on a note for $12,000, dated July 12, 1902, which was a renewal of a note for the same amount dated July 27, 1901, sued on in the second count.

The declaration in the second action contained five counts. The first count was on a note for $10,000, dated March 25, 1902. The second was on a note for $5,000, dated July 10, 1902. A renewal of a note, dated September 24, 1901, was declared on in

the fourth count. The third count was on a note for $5,000, dated July 12, 1902. A renewal of this note, dated January 1, 1902, was declared on in the fifth count.

All these notes purported to be signed by the defendants W. H. Stuart and Susan M. Stuart, who were husband and wife, and were payable to the makers and purported to be indorsed by them and by one Jewell, who sold them to the plaintiff corporations.

The cases were sent to an auditor. The auditor found that the defendant W. H. Stuart became incompetent to transact business on June 25, 1902. In the first action he found against the defendant W. H. Stuart on the original note and in his favor on the renewal note. In the second action he found against the defendant W. H. Stuart on original notes (declared on in the first, fourth and fifth counts), and in his favor on the renewal notes (declared on in the second and third counts) which, he found, were made after Stuart became incompetent to transact business. He found that all the signatures purporting to have been made by the defendant Susan M. Stuart were forgeries, and found for her on all counts in both actions.[*]

It was admitted that none of the signatures to the notes here in question were in the usual handwriting of Mrs. Stuart. The plaintiff's case was that Mr. and Mrs. Stuart desired to keep from Mr. Wentworth, Mrs. Stuart's father, who was a rich man, knowledge of the fact that they were borrowing money, and for that purpose (in signing these notes and other papers relating to transactions which they desired to keep from Mr. Wentworth) Mrs. Stuart used a different signature not resembling at all her ordinary signature. For the purpose of proving Mrs. Stuart's signature to the notes here sued on the plaintiff offered the testimony of a justice of the peace that a similar signature to a mortgage deed had been acknowledged by her before him to be hers, when he took her acknowledgment and that of her husband to that deed. " To the admission of this evidence for the purpose

---

[*] The actions were brought in the Supreme Judicial Court on September 17, 1904. The cases were tried together in April, 1908, before *Morton*, J. He ruled that upon all the evidence the plaintiffs were not entitled to recover against the defendant Susan M. Stuart, and ordered a verdict to be returned in her favor. The plaintiffs alleged exceptions.

of proving a standard the defendant objected upon the ground that the only competent evidence would be evidence of the person who saw the signature written, and that mere evidence of admission by the parties sought to be bound that the signature in question was genuine was not competent. The single justice did not sustain this objection, but ruled that a signature to be offered for the purpose of comparison as a standard must be established by clear and undoubted evidence, to the satisfaction of the court, and inquired of the defendant's counsel whether or not the signature of Mrs. Stuart to the mortgage, concerning which the witness was being questioned, was disputed, to which inquiry counsel for Mrs. Stuart replied that the signature was disputed by her, and that the signature itself was the subject of litigation in another suit." The presiding justice refused to receive the testimony of the justice of the peace, and the plaintiff took an exception. The plaintiff then offered to show by several witnesses that Mrs. Stuart's signature to this mortgage and a similar signature of Mrs. Stuart to a statement of her financial condition, dated July 15, 1901, and another similar signature to a guaranty dated April 30, 1902, guaranteeing all obligations due from her husband to Jewell, and similar signatures to other mortgages and notes, had " in terms been admitted to be genuine by the defendant " Mrs. Stuart. " The court inquired if the other signatures, concerning which it was claimed Mrs. Stuart had admitted them to be genuine, were disputed, to which her counsel replied that they were disputed. The court thereupon declined to hear any evidence in support of the genuineness of those signatures, saying that he could not, upon such a state of offers, *pro* and *con*, find a signature to have been established as a standard. It was urged by counsel for the plaintiff that the court should hear all the admissible evidence which the plaintiff could adduce, including the admissions of genuineness by the defendant, and that the defendant could only meet such evidence by herself producing evidence in contradiction, and that the mere assertion of counsel that a signature was disputed was not sufficient to deprive the plaintiffs of the right of putting in evidence to prove the genuineness of those signatures." All the testimony offered was excluded, and the plaintiff took an exception.

The course taken would have been within the discretion of the presiding justice under ordinary circumstances. His ruling was right that a standard need not be proved by the testimony of the person who saw the signature offered written. In this Commonwealth a standard of handwriting cannot be proved by the opinion of witnesses but may be proved by any evidence, direct or circumstantial, independent of opinions. *Commonwealth* v. *Tucker*, 189 Mass. 457. Under ordinary circumstances signatures can be procured which are not the subject of litigation in other suits and about which there is no dispute. Under those circumstances it is within the discretionary power of the judge to refuse to receive evidence as to signatures which are in litigation or are in dispute and to require the party seeking to establish the standard to produce signatures not open to these objections. Such a discretion rests on the same ground as the power to limit parties to a specified number of experts, for example. But the case at bar was not an ordinary case. The plaintiffs' contention here was that Mrs. Stuart used a signature different from her ordinary signature, for certain transactions including those here in question. All these signatures were disputed by her, and all of them (as we understand the bill of exceptions) were the subject of litigation in other actions. To refuse to hear the evidence offered under those circumstances was to refuse to try the case the plaintiffs offered to prove.

As the case must go back for a new trial, we will consider the questions raised at this trial which are likely to arise again.

1. The plaintiffs made an offer of proof which they contended warranted a finding that Mrs. Stuart was estopped to deny that the signatures to the notes sued on were hers. The presiding justice excluded the evidence offered on the ground that if the facts stated in the offer were proved the jury would not be warranted in finding an estoppel. The plaintiffs now contend that this is not the way in which the matter was dealt with by the presiding justice. They now contend that the presiding justice excluded this evidence as incompetent, that the facts which they offered to prove were competent and if they had been admitted " the plaintiffs might have gone forward with additional facts on this subject, but with these facts ruled out further effort under the circumstances was useless."

We cannot take this view of the ruling.    But whether we are or are not right in the view of the ruling which we take is of no consequence.    The case is to go back for a new trial on other grounds, and the question of estoppel is now of importance only as it may arise at the new trial.

The fact as to which the plaintiffs sought to make out an estoppel on the part of Mrs. Stuart was the genuineness of the signatures of her name to the four original notes and the three renewal notes declared upon in the two actions now before us.

What the plaintiffs offered to prove was that before the question of renewing the three original notes and of buying the $10,000 note declared on in the first count of the second action was up for consideration, Jewell's clerk saw Mrs. Stuart and showed her three instruments each bearing a signature of Mrs. Stuart, similar to the signatures of the notes here sued on.    That these instruments were (1) a statement of Mrs. Stuart's financial position, dated July 15, 1901;  (2) a guaranty of all obligations owed by her husband to Jewell;  and (3) a note for $5,000 which is not set forth in the bill of exceptions.    That Mrs. Stuart told Jewell's clerk that the signatures to these three instruments were hers.    That the clerk reported that to Jewell and made a minute of it on the first two instruments.    That this was reported to the officers of the plaintiff corporations, and the instruments with the minute of Jewell's clerk were submitted for their inspection.    That thereupon the officers of the plaintiff corporations, being satisfied as to the genuineness of Mrs. Stuart's signature to the three original notes then held by them and to the three renewal notes and the further note for $10,000, and relying on this statement of Jewell's clerk, took the three renewal notes and bought the $10,000 note.

If Mrs. Stuart had told the plaintiff corporations that the signatures to the notes here sued on were hers, knowing that they were intending to act on her statement, and they did act on it relying on her statement, she would have been estopped to assert that the signatures were not hers, if that was the fact.    But the testimony which was excluded was not testimony that Mrs. Stuart admitted the signatures which are affixed to the notes declared on to be hers.    All that the testimony excluded amounted to was that Mrs. Stuart admitted signatures to be hers which

were similar to those here sued on. We have already decided that Jewell's clerk can testify to these facts as a link in the chain of evidence tending to show that the signatures to the notes here declared on were in fact her signatures.

The plaintiff's counsel is not content with that. What he asks us to hold is that Jewell's clerk be allowed to testify to these facts as an estoppel. That means that if in fact Mrs. Stuart did not sign the three instruments shown her by Jewell's clerk and did not sign the notes here sued on, she is estopped from disputing her signatures to the notes sued on because she stated that she signed the three instruments shown her by Jewell's clerk. We are of opinion that these facts do not raise an estoppel. ;

If Jewell's clerk had told Mrs. Stuart that the plaintiff corporations were considering the purchase of a note and the renewal of three notes all bearing signatures similar to the signatures to the three instruments which the clerk then had, and, for the purpose of determining the genuineness of those signatures which were in all respects similar to the signatures to the three instruments then held by the clerk, they desired to know whether the signatures to the three instruments were genuine, and under those circumstances Mrs. Stuart had stated that the signatures were hers, we should have had something which is missing in the offer of proof. There was nothing in the offer of proof from which such a fact could be found as matter of inference.

The plaintiff corporations had a right to rely on what took place between Mrs. Stuart and Jewell's clerk as making the signatures to the three instruments standards of Mrs. Stuart's handwriting. But since there is no evidence that the admission as to the signatures to the three instruments which Jewell's clerk had were intended by Mrs. Stuart to be acted upon by the plaintiffs in buying the $10,000 note and renewing the other three notes here sued on, these admissions do not create an estoppel as to those notes. *Plumer* v. *Lord*, 9 Allen, 455. *Andrews* v. *Lyons*, 11 Allen, 349. *Turner* v. *Coffin*, 12 Allen, 401. *Carroll* v. *Manchester & Lawrence Railroad*, 111 Mass. 1. *Nourse* v. *Nourse*, 116 Mass. 101. *Shepard & Morse Lumber Co.* v. *Eldridge*, 171 Mass. 516, and cases cited at p. 531. *Dallinger* v. *Richardson*, 176 Mass. 77.

It is to be noted that in the offer of proof it is stated that

Jewell told the officers of the plaintiff corporations "that Mrs. Stuart was told that Miss Woods had been sent there to get her acknowledgment regarding the notes." We assume that the words "regarding the notes" refer to the notes here sued on. The difficulty is that while the plaintiffs offered to prove that Jewell told that to the officers of the plaintiff corporations, there was no offer to prove that Jewell's clerk told that to Mrs. Stuart. On the contrary what the plaintiffs offered to prove by Jewell's clerk was that she said to Mrs. Stuart "that she had been sent down there to get her acknowledgment of the genuineness of her signature to those papers," meaning the three instruments she had with her.

We are of opinion that the facts set forth in the offer of proof (if believed) did not warrant a finding that Mrs. Stuart was estopped from proving that the signatures of her name to the notes sued on were not hers.

2. Mrs. Stuart testified before the auditor that in her opinion the signature of her name to the notes here sued on and to the statement of condition and the guarantee shown to her by Jewell's clerk were written by her husband.

As evidence that her husband was her general agent with authority to sign the notes here in question, the plaintiff offered to prove that Mrs. Stuart's father had arranged to have the dividends due on certain shares of New York Central and Hudson River Railroad Company stock owned by her come to him to be sure that she had not sold them. That she did sell them and that she and her husband, to prevent this being found out by her father, bought on margin the number of shares formerly owned by her, just before each dividend was declared and sold them immediately afterward, giving directions to have the dividends sent to her father who then handed them to her. This did not tend to show that her husband was authorized to sign the notes here sued on, and was properly excluded.

There was evidence that Mrs. Stuart's husband had sent $20 to Kidder, Peabody and Company, with a request that they extend a note with signatures of himself and his wife similar to those on the notes here in suit. The plaintiff offered to prove an admission by Mrs. Stuart "that she knew the $20 was going to Kidder, Peabody & Company; that she supposed her husband

had asked her for $20 to pay Kidder, Peabody & Company, but whether he said he had bought her something, or whether he said she had got to pay it on something, she did not know, but there it was in the book, and that was all she knew about it." This was rightly excluded. This evidence did not connect Mrs. Stuart with knowledge of the note held by Kidder, Peabody and Company, nor tend to prove that her husband was her agent to sign the notes sued on.

There is nothing in the evidence which the plaintiff offered to prove by Jewell's clerk tending to show that Mrs. Stuart had made her husband her agent to sign the notes sued on, and it was properly excluded when offered for that purpose.

*Exceptions sustained.*

*W. M. Noble*, (*A. S. Davis* with him,) for the plaintiff.
*R. M. Morse*, (*M. Morton* with him,) for the defendants.