NEWTON CENTRE TRUST COMPANY *vs.* SUSAN M. STUART & another.

NEWTON CENTRE SAVINGS BANK *vs.* WILLOUGHBY H. STUART & another.

Suffolk.     November 16, 1910. — March 3, 1911.

Present : KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Evidence,* Declarations of deceased persons, Competency.

Upon an exception to the admission in evidence of a statement of a deceased person under R. L. c. 175, § 66, it must be assumed, unless the contrary is shown by the record, that the trial judge made all the findings necessary under that statute.

At the trial of an action against a husband and wife on certain promissory notes, amounting to $32,000, purporting to be signed and indorsed by both of the defendants, the wife contended that the signatures purporting to be hers on the faces and the backs of the notes were forged by her husband or by some one procured by him, and testified that she knew nothing of them and had received nothing for them. At the time of the trial the father of the wife was dead, and the presiding justice under R. L. c. 175, § 66, allowed the plaintiff to show that the father had said, "That scoundrel [meaning the husband] has persuaded her to put her name to over $100,000 worth of that paper, and I know it because she has told me so." It appeared that at the time that this statement was testified to have been made the husband had given to a certain person notes purporting to have been signed by his wife amounting to $277,000, but there was no evidence that at the time the wife's father made the statement the amount of notes which had been given by the husband was known and it probably was not known. The presiding justice, in admitting the evidence of the father's declaration, said to the jury that it should not be considered unless the jury found, first, that the wife made the alleged statement to her father, and, second, that she intended the statement to include the notes sued upon. *Held,* that, thus guarded by the instruction of the presiding justice, there was no error in the admission of the testimony.

At the trial of an action against a husband and wife on certain promissory notes purporting to be signed and indorsed by both of the defendants, the wife con-

tended that the signatures purporting to be hers on the faces and the backs of the notes were forged by her husband or by some one procured by him, and testified that she knew nothing of them and had received nothing for them. The signatures on the notes sued upon purporting to be those of the wife were not in her ordinary handwriting and other signatures about sixty in number offered by the plaintiff and admitted by the trial justice as standards also were not in the wife's ordinary handwriting. The wife testified that her father had wished her not to dispose of any property that he had given to her. The trial justice admitted evidence offered by the plaintiff to the effect that it had been arranged between the wife and her father that all the dividends from certain shares of railroad stock which her father had given to her should be sent to her in care of her father, in order that he might see that she had not sold the shares, that every quarter immediately after the payment of the dividend she sold these shares and immediately before the next dividend accrued she bought them back again with borrowed money, giving directions to have the dividends sent to her father, who then handed them to her. The plaintiff offered this evidence as showing a part of a scheme to conceal the wife's financial transactions from her father, which the plaintiff relied upon to explain why her signatures to the notes sued upon and those put in evidence by him as standards were not in the wife's ordinary handwriting. *Held*, that this evidence, although not admissible to show that the husband was his wife's general agent, was admissible for the purpose for which it was offered and admitted.

At the trial of an action against a husband and wife on certain promissory notes purporting to be signed and indorsed by both of the defendants, the wife contended that the signatures purporting to be hers on the faces and the backs of the notes were forged by her husband or by some one procured by him, and testified that she knew nothing of them and had received nothing for them. The signatures on the notes sued upon purporting to be those of the wife were not in her ordinary handwriting and other signatures offered by the plaintiff and admitted by the presiding justice as standards also were not in the wife's ordinary handwriting. The plaintiff introduced evidence tending to show that the signatures of the notes sued upon and of the standards were in the handwriting of a woman. It appeared that immediately after the notes sued upon were given the wife and her husband went to Europe. The wife offered to show by the testimony of her daughter in law that after the return of the wife and her husband from Europe the husband asked the witness to sign the name of his wife in a disguised handwriting to a subscription upon rights for shares of stock and that the witness refused to do it. The presiding justice excluded the evidence. *Held*, that the exclusion could not be said to be erroneous, because the justice well might have found that this was an independent fraud and have ruled on that ground that evidence of it was not admissible.

At the trial of an action against a husband and wife on certain promissory notes, amounting to $32,000, purporting to be signed and indorsed by both of the defendants, the wife contended that the signatures purporting to be hers on the faces and the backs of the notes were forged by her husband or by some one procured by him, and testified that she knew nothing of them and had received nothing for them. The signatures on the notes sued upon purporting to be those of the wife were not in her ordinary handwriting and other signatures offered by the plaintiff and admitted by the presiding justice as standards also were not in the wife's ordinary handwriting. The plaintiff contended that the wife used a feigned signature to keep from her father the fact that she was

signing the notes.  At the time that the notes sued upon were given the husband made an adjustment of transactions with the person to whom the notes sued upon were given for the sum of $32,000 represented by them, and immediately after this adjustment the wife and her husband went to Europe.  It appeared that about that time the husband had given to the same person sixty-seven notes purporting to be signed by his wife to the amount of over $277,000, and it could have been found that the notes sued upon were among these.  The wife testified that she never signed any of these notes and that her husband had forged her name upon them or had procured some one to do so.  The wife offered to show by the testimony of her daughter in law that when she returned with her husband from Europe the husband asked the witness to keep from his wife any message or messages in regard to any promissory notes, and made other requests of a similar character, indicating a desire on his part that his wife "should not be informed of anything in connection with promissory notes."  The presiding justice excluded the evidence, and after a verdict for the plaintiff the wife alleged exceptions.  *Held*, that the exclusion was erroneous, because the jury might have found that the request of the husband to his wife's daughter in law had reference to the sixty-seven notes purporting to have been signed by his wife and had reference to some if not all of the notes sued upon, and this fact, if they should find it, was a material one which should be considered by the jury.

TWO ACTIONS OF CONTRACT upon certain promissory notes, described in the opinion, which were alleged to have been indorsed by the defendants Willoughby H. Stuart and his wife Susan M. Stuart.  Writs in the Supreme Judicial Court dated September 17, 1904, and July 20, 1903.

The cases were referred to Arthur Lord, Esquire, as auditor. He filed a report in which he found for the defendant Susan M. Stuart in both cases.  The cases first were tried together before *Morton*, J., who ordered verdicts for the defendant Susan M. Stuart, the defendant Willoughby H. Stuart making no defense. The plaintiffs alleged exceptions, which were sustained by this court in a decision reported in 201 Mass. 288.  In that report the name of the plaintiff in the second case is stated as being the same as that of the plaintiff in the first case.  That was an error.  The plaintiff in the second case then was and now is the Newton Centre Savings Bank.

After that decision there was a second trial of the cases before *Sheldon*, J.  The liability of the defendant Willoughby H. Stuart was admitted, but the defendant Susan M. Stuart denied that she signed or indorsed any of the notes or that she was liable upon them.  The jury returned a verdict for each of the plaintiffs for the amount of the notes with interest; and the de-

fendant Susan M. Stuart alleged exceptions, raising questions as to the admissibility of evidence which are stated in the opinion.

*R. M. Morse*, for the defendant Susan M. Stuart.

*W. M. Noble & T. W. Proctor*, for the plaintiffs.

LORING, J.   These cases are before us on exceptions taken at the new trial consequent on the decision of this court in *Newton Centre Trust Co.* v. *Stuart*, 201 Mass. 288.

1. The first exception argued by the defendant is to the ruling of the presiding justice allowing the plaintiffs to show that Mrs. Stuart's father said in September, 1902: "That scoundrel [meaning the defendant's husband] has persuaded her to put her name to over $100,000 worth of that paper, and I know it because she has told me so." We speak of Mrs. Stuart as the defendant because no contest has been made in these actions by her husband's guardian.

The two actions were on trial at the same time. The first action was on a note for $12,000 dated July 27, 1901 (renewed by a note dated July 12, 1902), and the second action was on three notes, one for $10,000 dated March 25, 1902, and two notes each for $5,000 dated September 24, 1901, and January 1, 1902 (renewed by notes dated July 10, 1902, and July 12, 1902, respectively). All the notes purported to be signed by Mr. and Mrs. Stuart, were payable to their own order and purported to be indorsed by them. They were also indorsed by one Jewell who sold them to the plaintiff corporations before maturity. The defendant's husband had been committed as an insane person on September 20, 1902, and the defendant's contention was that her signatures on the face and back of these notes were forged by him. She testified that she knew nothing of them and had received nothing for them and that her alleged signatures had been made by her husband or some one procured by him.

It was found by the auditor that the defendant's husband had a series of transactions with Jewell between July 1, 1900, and July 19, 1901, when they were adjusted by a settlement in which the husband gave Jewell eight notes aggregating $32,000 and a mortgage for $30,000. And that between that date (July 19, 1901) and August 6, 1902, the husband gave Jewell sixty-seven notes purporting to be signed by the defendant to the amount of over $277,000. It also appeared from the auditor's

report that in the spring of 1902 it was discovered that the defendant's husband, who was then the British consul in Boston, was short in his accounts to the amount of $15,000. This amount was paid by the defendant's father, and he resigned or was discharged. It was under these circumstances that the plaintiffs were allowed to show by one of the defendant's witnesses that her father made the statement above set forth.

The statement was not admissible except under R. L. c. 175, § 66, and the presiding justice must be taken to have made the findings necessary under that act. There was no evidence that at the time the defendant's father made the statement the amount of notes which had been issued by the defendant's husband was known; and it is not likely that it was. A statement by the defendant under these circumstances that the husband had " persuaded her to put her name to over $100,000 worth of that paper," without other evidence, warranted the inference that the defendant intended to include these notes. The presiding justice, " in admitting this evidence, stated to the jury that it was not of the remotest consequence and should not be considered unless the jury found, first, that Mrs. Stuart said this to her father, and second, that she intended it to include these notes." Guarded as it was, there was no error in admitting this testimony.

2. The second exception argued by the defendant is to the admission of various transfers of her shares of stock in the New York Central Railroad Company made by her from July, 1900, to May, 1902.

The statement of these transactions in the bill of exceptions is so meagre that if the question were to be decided upon it alone we should have to sustain this exception.

But the counsel for the defendant at the argument stated that the facts thus briefly referred to here are those set forth in the bill of exceptions before this court in *Newton Centre Trust Co.* v. *Stuart,* 201 Mass. 288. This was stated by the learned counsel for the defendant in order that the plaintiffs might have all that they ought to have in the decision of this exception.

It appears in the former bill of exceptions that the transactions in New York Central stock consisted in the defendant's selling her stock every quarter immediately after payment of the dividend and buying it in with borrowed money immediately before

the next dividend was to be paid. It had been arranged between the defendant and her father that all such dividends should be sent to her in care of her father. When received by him they were turned over by him to her and indorsed by her to her husband, who cashed them and accounted to her for the proceeds. It was stated in the former bill of exceptions that this evidence "was [then] offered by the plaintiffs as evidence tending to prove general agency, and was excluded." It was decided in *Newton Centre Trust Co.* v. *Stuart*, 201 Mass. 288, that the exception taken to the exclusion of this evidence when offered for that purpose could not be sustained.

At the second trial this evidence was offered for a different purpose, namely, as part of a scheme which the plaintiffs relied upon as explaining why the signatures of the defendant to the notes sued on and the signatures, "about sixty in number," admitted by the court as standards or some of them were not in the defendant's ordinary handwriting. At the trial here in question the defendant testified that her father had wished her not to dispose of any property that he had given her. The plaintiffs' contention was that this manipulation of the New York Central stock and the use of a different signature in case of these notes was part of a scheme to conceal her financial transactions from her father. We are of opinion that it was competent for that purpose.

3. The fourth exception argued by the defendant was to the exclusion of the defendant's offer to show by Mrs. Erickson, the wife of the defendant's son, "that when Mr. and Mrs. Stuart returned from Europe in the summer of 1901," the defendant's husband "asked Mrs. Erickson to keep from Mrs. Stuart any message or messages in regard to any promissory notes, and made other requests of a similar character, indicating a desire on his part that" the defendant "should not be informed of anything in connection with promissory notes." And the fifth exception was to the ruling of the presiding justice by which he refused to allow the defendant to show by the same witness that after the return of the defendant and her husband spoken of above he asked her to sign the name of the defendant to a subscription upon rights for stock in a disguised hand, and that she refused to do it.

As to the second of these two exceptions we are of opinion that the presiding justice might well have found that this was an independent fraud and therefore not admissible in this case even though the plaintiffs had put in evidence that the signatures to these notes and to the standards were in the handwriting of a woman.

But the evidence which was the subject of the fourth exception stands on a different footing. The jury's decision depended upon which of two alternative views of undisputed facts was the true view of them. The facts which were not in dispute were that on July 19, 1901, the defendant's husband had an adjustment of his transactions with Jewell for the preceding year, in which the defendant's husband gave Jewell eight notes aggregating $32,000. The first note sued on here is dated July 27, 1901. After this adjustment the defendant and her husband went to Europe. Just when they went and when they returned from Europe is not stated. The request to Mrs. Erickson which the defendant offered to prove was a request made " when Mr. and Mrs. Stuart returned from Europe in the summer of 1901." One of the original notes here sued on is dated September 24, 1901, and it does not directly appear that there was any note after July 27, 1901, earlier than the note dated September 24, 1901. It is stated by the auditor and does not seem to have been disputed that " between that date [July 19, 1901] and August 6, 1902, Stuart gave notes to Jewell, purporting to be signed by Mrs. Stuart, to the number of sixty-seven, and aggregating over $277,000." It is apparent, or at least it could have been found, that the notes here sued on were among these $277,000 of notes. The defendant's contention (and she so testified) was that she never signed any of these notes including the notes in suit, and never received a cent of their proceeds, and that her husband had forged her name to them or had procured some one to do so. In that connection there was evidence (apparently undisputed) that he had given Jewell a guarantee of payment of notes given by him to Jewell to the amount of $166,635, to which were attached the forged signatures of the defendant and her two sons. It was the plaintiffs' contention that she did sign the notes sued on, using a feigned signature to these and the other notes to keep from her father the fact that she was signing the notes.

If the defendant had been in a position to prove that her husband had tried to keep and had succeeded in keeping from her during the whole period from September, 1901, to August 6, 1902, all knowledge of the fact that he had issued these notes purporting to be signed by her to the amount of $277,000, including the notes here sued on, the jury could have found that the most likely explanation of that fact lay in the truth of the defendant's story and that there was no really adequate explanation of it if the plaintiffs' view of the undisputed facts was the true one.

The evidence which the defendant was in a position to offer fell short of that, but in our opinion it was of the same kind. The request made by the husband to Mrs. Erickson was made, or could have been found to have been made, immediately on the return of Mr. and Mrs. Stuart from Europe, where they went soon after July 19, 1901 ; for the offer was to prove a request made by the husband " after the return of Mrs. Stuart and himself in the summer of 1901." That is to say, it was made by the defendant's husband immediately before he began to give to Jewell notes purporting to be signed by the defendant to the amount of $277,000. The fact which was offered to be proved was that it was immediately upon the return from Europe (where the defendant and her husband went immediately after the $32,000 notes were given) and that it was immediately before the defendant's husband began to issue the sixty-seven other notes aggregating $277,000 that he asked to have " any message or messages in regard to any promissory notes " kept from Mrs. Stuart, " and made other requests of a similar character, indicating a desire on his part that " the defendant " should not be informed of anything in connection with promissory notes." The jury would have been warranted in finding (if indeed they could have found otherwise) that this request, made at this time, had reference to the sixty-seven notes purporting to be signed by the defendant, aggregating over $277,000, and that it had reference to some if not all of the notes here sued on. If they did find that these requests of the defendant's husband referred to some at least of the notes here sued on, it was a fact which had enough significance to require its admission. In our opinion it should have been admitted.

The entry must be                        *Exceptions sustained.*