# CHARLESTON.

NATHAN J. HANCOCK *v.* EDITH M. SNIDER, *Executrix of*
*D. N. Snider, Dec'd.*

(No. 5044)

Submitted September 23, 1924.    Decided April 27, 1926.

1.  FORGERY—*In Case of Alleged Forgery, Evidence is Admissible*
    *to Show State of Affairs Rendering it Probable or Improb-*
    *able That Instrument Was Executed by Alleged Maker,*
    *Including Relationship Between Such Person and One*
    *Charged With Forgery.*

    In the case of alleged forgery evidence is admissible to
    show a state of affairs which would render it probable or im-
    probable that the instrument was executed by the alleged
    maker, including the relationship between such person and
    the one charged with the forgery.   (p. 539.)
    (Bills and Notes, 8 C. J. § 1343.)

2.  TRIAL—*In Action Against Executrix of Deceased on Note*
    *Purported to Have Been Executed by Deceased, Instruc-*
    *tion Explaining Statutory Restraint on Evidence of Plain-*
    *tiff and Privilege of Refraining From Testifying Conferred*
    *on Defendant by Statute, and Stating That Failure of De-*
    *fendant to Testify Regarding Matters Within Statute*
    *Should Not be Considered, Was Proper (Code, c. 130, § 23).*

    An instruction is proper which fairly explains to the jury
    the statutory restraint upon the evidence of the plaintiff,
    and the privilege of refraining from testifying conferred
    upon the defendant, by Section 23, Chapter 130, Code, and
    informs the jury that the inability of the plaintiff and the
    failure of the defendant to testify regarding matters within
    the purview of the statute should not be taken into consid-
    eration in arriving at a verdict.   (p. 540.)
    (Trial, 38 Cyc. p. 1745.)

3.  WITNESSES—*Interested Witness May Testify as to Physical*
    *Condition of Instrument at Certain Date and Other Mat-*
    *ters Relating Thereto Not Involving Any Personal Trans-*
    *action With Deceased, Whose Executrix Was Being Sued*
    *on Note Executed by Deceased (Code, c. 130, § 23).*

    An interested witness may testify under Section 23, Chap-
    ter 130, Code, as to the physical condition of an instrument
    at a certain date, and other matters relating to the instru-

ment not involving any personal transaction with the decedent. (p. 542.)

(Witnesses, 40 Cyc. p. 2324.)

4. EVIDENCE—*In Action on Note Defended on Ground of Forgery, Photographic Enlargement of Genuine Writing to Facilitate Comparisons is Proper.*

It is proper to admit in evidence properly verified photographic enlargments of genuine writing for the purpose of facilitating comparisons. (p. 543.)

(Evidence, 22 C. J. §§ 722, 890.)

5. SAME—*Opinion Evidence, on Matter on Which Jury Are as Competent to Form Accurate Opinion as Witness, is Not Admissible; in Action on Note Defended on Ground of Forgery Permitting Witness to State That Note Written in Handwriting of One Other Than Maker Would Arouse Suspicion, That Variation in His Signature Would Support Suspicion of Forgery, and That it is Easier to Forge Signature With Variations Than One Without Variations, Was Improper.*

Opinion evidence concerning a matter on which the jury are as competent to form an accurate opinion as the witness, is not admissible. (p. 545.)

(Evidence, 22 C. J. § 596.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Marion County.

Action by Nathan J. Hancock against Edith M. Snider, executrix of D. N. Snider, deceased, on a note. Judgment for defendant, and plaintiff brings error.

*Reversed and remanded.*

*Harry Shaw* and *L. C. Musgrave,* for plaintiff in error.

*William S. Haymond, Frank C. Haymond,* and *Tusca Morris,* for defendant in error.

LITZ, JUDGE:

The plaintiff Nathan J. Hancock prosecutes error to the judgment of the circuit court upon a verdict for the defendant Edith M. Snider, the widow and executrix of David N. Snider, deceased, in an action of debt on the following note

alleged to have been made and delivered to the plaintiff by said David N. Snider:

"25,000.00        Fairmont, W. Va., Dec. 23, 1914.
On demand I promise to pay to the order of Nathan J. Hancock without offset and for value re-reived Twenty five thousand Dollars.

And in addition thereto, all legal costs, and expenses of collection, including an attorney's fee of ten per cent. of the above sum, in case payment of this note shall not be made at maturity.

Interest at six per cent.
Negotiable and Payable at
THE NATIONAL BANK OF FAIRMONT of
Fairmont, W. Va.

No. ............
Due.....................        D. N. SNIDER"

On the reverse side is written in ink:

"April 6, 1920, Credit by Cash $100.00."

The purported maker of the note was at the time of its alleged execution $77\frac{1}{2}$ years of age. The plaintiff, a nephew of Snider, during the life of the first wife of the latter, who died at an advanced age October 15, 1913, made his home with the Sniders in the city of Fairmont for five or six years, providing for the care and comfort of these old people. A short while before her death the plaintiff married and established a dwelling for himself in Fairmont, but frequently thereafter visited the Snider home.

Being the owner of a large estate, Snider, in 1915, at the age of 79, married Miss Edith M. Palmer, who now claims all of his property by deed and will. This suit was brought against Snider in September, 1921. She immediately had herself appointed Committee for him and took charge of all his affairs. He died November 15, 1921, before trial of the case. On motion of plaintiff, the suit was revived against her, as executrix of the estate. January 21, 1922, she demurred, and pled the general issue, to the declaration, and on April 14, 1922, filed a plea of *non est factum*, denying the execution of the note and the genuineness of the signature of Snider thereto. The defendant does not raise any issue in-

volving inadequacy or failure of consideration for the paper, but relies solely upon the defense of forgery.

L. J. Curry testified that the note was signed (with an indellible pencil) and delivered by D. N. Snider at the home of plaintiff in Fairmont on the evening of December 23, 1914, in the presence of the witness, the plaintiff and his wife, now deceased; the witness having prepared it on the occasion at the request of Snider by filling in with pen a printed form of note. Curry stated further that the old man said at the time of delivering the paper to the plaintiff it was ''for his services, what he had done for him, for his adopted daughter Claudia (then deceased) and for his wife during her sickness''. Because of the inhibition of Section 23, Chapter 130, Code, Curry is the only competent living witness to the transaction. A number of non-expert witnesses who had known Snider during his life and were more or less familiar with his handwriting and signature, identified the signature to the note as genuine, while others of similar qualifications expressed the opposite opinion. The genuineness of the instrument was also sustained by the testimony of three handwriting experts introduced by the plaintiff and questioned by one expert for the defendant. During the trial numerous exhibits, consisting of purported signatures of Snider, proved to the satisfaction of the trial court as genuine, and several photographs of such signatures, were used by the witnesses for both sides as standards for the purpose of comparison with the signature to the note.

There are many assignments of error, coming under the following classification:

(1)    The exclusion of competent evidence in behalf of plaintiff.

(2)    The admission of incompetent evidence for the defendant.

(3)    The rejection of proper instructions in behalf of plaintiff.

(4)    The granting of improper instructions for the defendant.

(5)   Refusal of the trial court to compel production by
      defendant and her counsel of alleged papers bear-
      ing the genuine signature of D. N. Snider for the
      purpose of comparison with the signature of the note.

Plaintiff was allowed to testify that he had received by
mail at Fairmont two letters in pencil, dated February 18,
and April 21, 1913, purporting to have been written by
Snider and mailed at Burlington, N. J., while he and his first
wife were there; but was not permitted to state that the
letters, in his opinion, had been written by Snider. The evi-
dence excluded was incompetent, because the plaintiff was not
shown to be acquainted with the handwriting of Snider.
*Johnson* v. *Bee*, 84 W. Va. 532, 100 S. E. 486.

Several witnesses for the defendant were asked on cross-
examination if in their opinion the letters were in the hand-
writing of Snider. Objections to these questions were sus-
tained. The authenticity of the letters not having been estab-
lished, nor the expected answers of the witnesses sufficiently
vouched, the ruling complained of does not constitute error.
The plaintiff did not attempt to prove the letters by any of
his numerous witnesses, who gave evidence of their familiarity
with the handwriting of Snider.

The evidence tendered by the plaintiff discloses that during
a number of years he lived at the Snider home, where he took
care of Snider and his first wife (who died of cancer), and
also an adopted, invalid daughter, nursing them during sick-
ness, and practically taking the place of a servant around the
home; and that Snider made numerous statements to the
effect that he expected to provide, or had provided for, the
plaintiff out of his estate in consideration of these services.
The court admitted some of such evidence for the purpose of
showing a general friendly relation between the plaintiff and
Snider, but excluded the details establishing the extent and
value of the services rendered. The jury should have had
the evidence in full. In the case of alleged forgery evidence
is admissible to show a state of affairs which would render it
probable or improbable that the instrument was executed by
the alleged maker, including the relationship between such

person and the one charged with the forgery. Such evidence is not only proper for the jury, but of great importance upon the issue to be determined. 8 C. J. 1028, 1029; *Newton Centre Trust Co.* v. *Stuart et al.*, 208 Mass. 221, 94 N. E. 454; *Green* v. *Jennings,* 184 Ill. App. 340; *Rhea* v. *Cook* (Tex.), 174 S. W. 892; *Crane* v. *Dexter Horton & Co.*, 5 Wash. 479, 32 Pac. 223.

While the court excluded the statement of the defendant's witness Galliher that in 1913 Snider told the witness, "he was very much afraid Mr. Hancock would get a piece of paper with his signature to it and make something out of it", the witness was permitted to state as his "impression" from the pretended statement that Snider was afraid of Hancock. The evidence upon which it was based having been excluded as improper, the alleged impression was clearly inadmissible.

Each of plaintiff's Instructions Nos. 1 and 2, refused, would have told the jury to deduct from the verdict, in event of a finding for him, a credit of $100.00 indorsed on the note. No valid reason is advanced for the refusal of both of these instructions, but we do not see that any material injury was thereby caused the plaintiff.

Instruction No. 7 of plaintiff, refused, stated that in a suit upon a promissory note it is not necessary to aver or prove that taxes had been assessed and paid thereon. This was, of course, a correct statement of law.

Plaintiff's Instruction No. 8 to the effect that a revenue stamp was not required upon the note was also improperly rejected. The War Revenue Act of October 22, 1914, 38 Stat. L. 753, 4 Fed. Stat. Anno. 2d ed., p. 298, imposed a stamp tax on promissory notes, without providing that a failure to observe the requirement would in anywise invalidate the instruments.

Plaintiff's Instruction No. 10, to the effect that certain evidence which had been rejected should not be considered by the jury, was rightly refused. *State* v. *Gebhart,* 70 W. Va. 232, 73 S. E. 864.

Plaintiff's Instruction No. 11, refused, would have told the jury that plaintiff could not testify as to any personal trans-

action had with the deceased, D. N. Snider, either as to the note sued on, or other personal transactions, ''including the production of letters written to plaintiff by deceased, unless the defendant executrix waives such disqualification of the plaintiff as a witness by testifying as to such personal transactions herself''. This instruction was improper as it indicated that the alleged letters from Snider to Hancock were not produced when in fact Hancock was permitted to testify that he had received them through the mail. Defendant's Instruction No. 11, given over plaintiff's objection, fairly explained the statutory restraint upon the testimony of plaintiff, and did not improperly inform the jury that the inability of the plaintiff and the failure of the defendant to be examined upon his or her behalf, or to introduce evidence as to any personal transaction or communication with the deceased, should not be taken into consideration in arriving at a verdict. An unfavorable inference cannot legitimately be drawn from a party's availing himself of a statutory privilege. ''The legislature has deemed the statute a wise and necessary one, and the enactment thereof has settled the policy of the State in that regard; and the courts have nothing to do but give it effect.'' *Ludlow* v. *Pearl's Estate,* 55 Mich., 312, 21 N. W. 315.

Plaintiff's Instruction No. 12, also relating to his inability to testify, was abstract and incomplete, and therefore properly refused.

Instructions Nos. 15 and 17 offered by plaintiff should have been given. In effect they would have instructed the jury that if they believed the note was actually signed by Snider they should find for plaintiff, notwithstanding the amount thereof may exceed the actual value of the services rendered by the plaintiff, as a promissory note given by one in declining years to a near relative for personal services rendered by the donee to the donor is so much in the nature of a testamentary disposition of property that the maker's estimate of the value of the services is a matter for his determination alone.

Plaintiff complains further because he was not permitted to testify that the note came into his possession on the day of its date, and that the signature thereto remained in the same condition to the time of the trial. Testimony of the plaintiff not involving a personal transaction with Snider is not within the inhibition of the statute. "An interested witness may testify as to the physical condition of the instrument at a certain time * * * and other matters relating to the instrument but not involving any transaction with the decedent." 40 Cyc. 2324; *St. Charles First Natl. Bank* v. *Payne*, 111 Mo. 291, 20 S. W. 41, 33 A. S. R. 520; *Harnett* v. *Holdrege*, 73 Nebr. 570, 103 N. W. 277; *Wadsworth Admr.* v. *Heermans*, 22 Hun. 455, affirmed 85 N. Y. 639; *Isenhour* v. *Isenhour*, 64 N. C. 640.

Several assignments relate to the admission of the testimony of witnesses for the defendant who were permitted to give their opinion of the genuineness of the signature to the note, after satisfying the trial court of their familiarity with Snider's handwriting. That several failed on cross-examination to identify as genuine certain signatures of Snider, designated as standards, affects the weight of their testimony and not its admissibility. 22 C. J. sec. 716, p. 624; Id. sec. 717; 10 R. C. L. p. 993; 11 R. C. L. p. 620; 63 L. R. A. 963, note.

Another point of error is that certain testimony of plaintiff's handwriting experts John V. Haring and Elbridge W. Stein, offered on rebuttal, was improperly rejected. Haring was not permitted to testify whether or not, in his opinion, the signature to the note in question was drawn by a skillful artist or penman. This was proper rebuttal to the evidence of defendant's expert witness Wood, who testified that the signature in question "was not written by the same hand that wrote the other signatures (standards) nor was it made by the same person that made the other signatures"; that the signature was "written with a steady hand"; that the "artfully made retracings" were "very artfully and skillfully placed upon the original outlines of the signature"; and that it was "a studiously drawn signature from a model or copy". The witness Stein was not permitted to state whether in his

opinion the more reliable way to determine the genuineness of a signature is by photograph or by comparison of admitted signatures with the questioned signature.  Although it is strongly contended by defendant that this was improper rebuttal testimony, defendant's witness Wood used the enlarged photographs as. a basis for his scientific examination of the admitted and alleged signatures, and stated, in describing the methods of handwriting analysis used by him as a professional handwriting expert, that enlarged photographs reflect the characteristics of the writings compared to substantially the same advantage as the microscope at the same degree of magnification and to even better advantage than a microscope and magnifying lens by virtue of the fact that all of a signature on the enlarged scale of magnification can be seen on enlarged photographs while only a part can be seen with a microscope or magnifying lens of the same degree of magnification.  The vouched evidence of Stein, who had testified that he was especially familiar with document photography and that projection enlargements are not microscopically correct, shows that he would have told the jury that the most reliable way to determine the genuineness of a signature is by comparison with original signatures and not with photographs.

It might be pertinent here to observe the striking inconsistency of defendant's evidence as to the authenticity of the signature to the note—numerous non-expert witnesses, bankers, acquaintances, etc., testifying readily that the signature is spurious because it is evidently somehow "different" from Snider's real signature known to them; while the professional handwriting expert Wood testified from his scientific examination that the signature is "a studiously drawn signature from a model or copy", very artfully and skillfully made—in effect conceding the similarity of the signatures, and maintaining that the services of a scientific expert are necessary to detect the fraud.

There was no error in admitting the evidence of W. E. Johnson, introducing photographic enlargements which he testified were "absolutely microscopically correct", made by

him from certain signatures of Snider admitted as standards. No objection was made at the time to any evidence of Johnson except the introduction of the photographs. These enlargements were used by defendant's expert witness Wood in connection with his examination of the standards and signatures in question. The trial court did not abuse its discretion in the admission of these photographs, as proper precautions were taken in the preliminary proof as to their exactness and accuracy. It is proper to admit properly verified photographic enlargements of genuine writing for the purpose of facilitating comparisons. *Johnson* v. *Commonwealth*, 102 Va. 927, 46 S. E. 789; 22 C. J. 785, 2 Wigmore Ev., 2d ed., Sec. 797; *Macey* v. *Barnes*, 16 Gray (Mass.) 161, 77 Am. Dec. 405; *Leland* v. *Leonard*, 95 Vt. 36, 112 Atl. 198.

The plaintiff takes exception to the testimony of several witnesses for the defendant offered for the purpose of showing the physical and mental weakness of D. N. Snider during a period of several months preceding his death. This evidence, though inconclusive, was at least admissible for the purpose of explaining the failure of Mrs. Snider (the real party in interest) to take the deposition of Snider, rather than have him declared a *non compos mentis* and herself appointed his committee.

The defendant was permitted, over the objection of plaintiff, to show by several witnesses that Snider "never told" them that "he had executed the note"; and that the witnesses "never knew" of the existence of the note until suit was brought. This evidence, and the statement of the witness McDaniel that he never knew Snider to transact business on "that kind of a scale" were incompetent and prejudicial to the plaintiff. It had not been stated by any one that the execution of the note was notorious or had been admitted by Snider. The fact that Snider had not made similar gifts to others was certainly not evidence under the circumstances tending to establish the alleged fraudulent character of the note. Considering the advanced age of Snider, his strong financial condition, the blood relation between the parties, the character of the services rendered by Hancock, and the fur-

ther fact that there was no particular relative to whom Snider intended to devise his property, as shown by the gift of his large estate to the woman he married almost at the close of life, it is not unreasonable or unnatural that he would have executed the note in question.

The witness McDaniel was allowed to state that a note written in the handwriting of one other than the maker would arouse suspicion, that a variation in the signature of Snider from certain standards would support suspicion that the note had been forged, and that it is easier to forge a signature with variations than a signature without variations. The jury were as competent as the witness to draw the inferences embodied in these expressions of opinion. Where all the relevant facts can be introduced in evidence, and the jury are competent to draw a reasonable inference therefrom, opinion evidence will not be received. 22 C. J. 499. ''The opinion of witnesses should never be received in evidence if all the facts can be ascertained and made intelligible to the jury, or if they are such as men in general are capable of comprehending and understanding.'' *Starcher* v. *Oil Company,* 81 W. Va. 587.

The trial court refused to require the defendant or her counsel, Frank S. Haymond, to produce under *subpoena duces tecum* ''all receipts, papers and documents such as checks, etc., containing the signature of D. N. Snider, in their possession or control'', for the purpose of comparing the signatures thereto with the signature to the note in question, apparently upon the ground that the required documents were not more specifically designated in the process; and further refused to require the defendant or her said counsel, upon examination as witnesses, to describe the papers in their possession in the handwriting of D. N. Snider, in order that their production might be properly secured. These rulings were clearly erroneous. There were necessarily very few writings of Snider obtainable, other than those in the possession of the defendant and her counsel which the plaintiff was unable more specifically to describe in the subpoena. The very fact that there was variation in the admitted signatures of Snider

is an additional reason for condemning the effort of the defendant and her counsel to withhold all documents except those which they might decide would be favorable to the defense.

We do not find any other of the numerous assignments substantial, or that the narration thereof would serve any useful purpose. For the errors noted the judgment of the lower court will be reversed, the verdict of the jury set aside, and a new trial awarded the plaintiff.

*Reversed and remanded.*