KATHRYN REALL *v.* AUNILL DEIRIGGI

(No. 9637)

Submitted April 24, 1945. Decided May 22, 1945.

*C. Brooks Deveny,* for plaintiff in error.

*Harrison Conaway* and *John S. Manley,* for defendant in error.

RILEY, JUDGE:

In this action of trespass on the case, plaintiff, Kathryn Reall, sought to recover damages for injuries sustained by her while a guest-passenger in an automobile owned by defendant, Aunill Deiriggi, and operated at the time by Lolly Mugnano. To a judgment entered on a verdict in the amount of sixty-three hundred dollars, defendant prosecutes this writ of error.

At the time of the accident, which occurred on Route No. 50, in the vicinity of the junction of Route No. 250 from the south, in Prunytown, West Virginia, plaintiff, defendant and the driver were returning to Fairmont, having a little over an hour earlier taken the plaintiff's mother to her home in Bayard, West Virginia.

Defendant, a friend of plaintiff, having learned that plaintiff was making arrangements to go to Bayard to get her mother and take her to Pittsburgh to see plaintiff's brother, who had been in an accident, offered to take plaintiff and her mother in his car. Plaintiff and defendant, the latter driving, left Fairmont for Bayard at 4 o'clock in the morning of August 14, 1941. They, together with plaintiff's mother, drove, via Oakland, Terra Alta and Morgantown, to Pittsburgh arriving at 1:00 o'clock in the afternoon. At 5:00 the same day, they left for Fairmont to find a driver for the remainder of the return trip to Bayard. Between 1:30 and 2:00 o'clock in the morning of August 15, defendant and his driver, Lolly Mugnano, stopped at plaintiff's room in Fairmont for plaintiff and her mother. They arrived at Bayard at 4:00 o'clock in the morning. With Mugnano driving, and defendant and plaintiff in the back seat, they started back to Fairmont between 4:05 and 4:15 o'clock. It was raining and plaintiff cautioned the driver after leaving Bayard. She testified that she did not relax until the automobile had descended Cheat Mountain; that on reaching Erwin, West Virginia, an intermediate point, she leaned back in the seat and relaxed, but did not go to sleep. In an unsworn statement, while she was in the hospital, she stated, in effect, that she had dozed all the way from Bayard to the place of the accident. She testified that she did not read the statement; that she was suffering at the time; that she "might have been a little bit confused"; and did not know the purpose of the paper she was signing. Rain fell all the way to the scene of the accident. In answer to inquiry regarding the manner in which Mugnano was operating the automobile after he got beyond Grafton on the way to Pruntytown, she stated "to the best of my knowledge, he was not driving very fast."

As the automobile approached Pruntytown from the east, plaintiff noticed the car "swerving". She braced herself and called the driver's attention to it. The automobile, according to plaintiff, then struck a mail box; began to run faster; and ran off the other side of the road. The next she knew she was in the Grafton City Hospital.

Plaintiff was permitted, over objection, to testify that some time after the accident she had a conversation with Mugnano, in defendant's presence, while she was a patient in the Fairmont Hospital, where she was taken on the day following the accident, at which time Mugnano told her that he must have fallen asleep and shot across the road. On cross-examination she testified that she was in a four-bed ward; that in addition to defendant and Mugnano, her mother and sister were present; that there were a number of people, other than plaintiff's visitors, in the room; that the conversation was between witness and Mugnano; that his remark was directed to her rather than defendant; and that she did not know whether defendant was in a position to have heard Mugnano's statement. The objection was renewed upon completion of cross-examination on the grounds that defendant did not hear and was not in a position to hear, which motion the court overruled. At the conclusion of the evidence, plaintiff's instruction No. 2, given, further emphasized this testimony by telling the jury that if it believed that the driver "went to sleep while so driving * * * thereby proximately causing the injuries complained of, they may find defendant was negligent * * *."

The defendant was asleep at the time plaintiff was injured, and had been since leaving Bayard. Defendant did not testify, except in behalf of plaintiff, on the ownership of the automobile, and Mugnano did not testify.

Two representatives of the Department of Public Safety, Corporal Dye and Trooper Randall, who arrived on the scene at 5:45 A. M., twenty to forty minutes, according to their testimony, after receiving a call in reference to the accident, testified on behalf of defendant concerning their observations. A composite of their testimony follows. From a point about one-tenth of a mile east of the junction

of Routes Nos. 50 and 250, heretofore referred to, and continuing west through Pruntytown, Route 50 is straight. Tire marks were found on the right (north) berm for a distance of one hundred fifty to three hundred feet. These marks began at a point opposite an island created by the juncture of the two roads, and continued to a point in a ditch where the course of the car changed abruptly to the left and crossed the highway. Just before this change in direction, the automobile had struck and knocked down a post supporting three mail boxes. Only the right wheels went on the berm. Where the tire marks began, there were two tracks approximately one foot apart, which "appeared to be sliding sideways * * * not following each other as car wheel tracks would if going in a straight path." After crossing the road the car went across a three-foot berm, down a little embankment and struck the porch of a house which stood twenty-five feet back from and four to six feet below the level of the highway. No marks were found between the point where the automobile left the south berm of the highway and the porch, except that the automobile apparently struck a pine tree which stood in front of the house. The automobile knocked down either two or three of the porch posts, damaged the porch flooring to some extent, and proceeded across the lawn striking and breaking off a cherry tree and striking another, and then turned over on its side up against or near another building. The distance from the mail boxes to the point where the car left the south side of the highway was estimated by the officers at seventy-five to one hundred feet.

On an objection, sustained, the record was vouched that had Corporal Dye and Trooper Randall been allowed to answer, they would have given their opinion, based on the foregoing testimony and their experience, that at the time the automobile left the road it was going at a rate of seventy to seventy-five miles an hour.

That plaintiff sustained severe injuries and has incurred doctor and hospital bills in excess of two thousand dollars is amply supported by the record.

The first error assigned deals with the action of the court in not permitting Corporal Dye and Trooper Ran-

dall to express an opinion as to the speed of the automobile, based on their experience and observation.

Generally speaking the opinion or conclusion of a witness should never be received in evidence if all the facts can be ascertained and made intelligible to the jury, or if they are such as a person of ordinary intelligence is capable of comprehending and understanding. 20 Am. Jur., Evidence, Section 765; *Skidmore* v. *Star Ins. Co.*, 126 W. Va 307, 27 S. E. 2d 845; *Cavendar* v. *Cline Ice Cream Co.*, 101 W. Va. 3, 131 S. E. 862; *Hancock* v. *Snider*, 101 W. Va. 535, 133 S. E. 131; *State* v. *Sixo*, 77 W. Va. 243, 87 S. E. 267; *Starcher* v. *South Penn Oil Co.*, 81 W. Va. 587, 95 S. E. 28. It is only in situations where the jury cannot be fully informed regarding the facts upon which it is based that an opinion or conclusion becomes admissible. *Curfman* v. *Monongahela West Penn Pub. Ser. Co.*, 113 W. Va. 85, 166 S. E. 848; *State* v. *Waters*, 104 W. Va. 433, 140 S. E. 139; *Starcher* v. *South Penn Oil Co., supra.* The jury, in the instant case, not only had the benefit of the conditions testified to by witnesses, Dye and Randall, but also was taken on the ground for a view. No one having seen the automobile in motion, we are of opinion that the rate of speed could well be determined by the jury, and that the proffered testimony was properly rejected.

The court's action in permitting the testimony that Mugnano had stated in the defendant's presence that he must have been asleep is challenged by the second assignment of error on the grounds: First, that the statement did not call for a reply; and, second, that it was not shown that defendant was in a position to hear. In an action such as this admissions by the defendant of facts and circumstances attending the plaintiff's injuries are competent evidence against him. These admissions may be either oral, written or by tacit acquiescence. The reason for receiving the latter is because the party by his silence is supposed to acquiesce; *qui tacet consentire videtur.* "*** statements made in the presence of another to which the latter does not reply are admissible against him as silent admissions when the statements are made under circum-

stances naturally calling for reply, if their truth is not intended to be admitted." *Mudd* v. *Cline Ice Cream Co.*, 101 W. Va. 11, 13, 131 S. E. 865. In order for one's silence to warrant the inference of acquiescence on his part, it must not only appear that the language used was fully understood by him, but also that the circumstances were such as afforded him an opportunity to speak, and such as would properly and naturally call for some reply from a person similarly situated. In a note to *State* v. *Ellison,* 266 Mo. 604, 182 S. W. 996, Ann. Cas. 1918C, 1, at page 20, it is stated: "Where the truth of the matter spoken of is not within the knowledge of the person addressed, his failure to contradict or deny the statement naturally cannot be held to amount to an admission of its truth." This note is supported by *Edwards* v. *Williams,* 2 How. (Miss.) 846, and other cases.

It is apparent that the defendant had no knowledge regarding the truth or falsity of such a statement, for, according to plaintiff's testimony in chief, defendant was asleep on the back seat of the automobile at the time it left the highway, and had been asleep since leaving Bayard. And plaintiff practically admitted on cross-examination that defendant was not in a position to hear the remark. Plaintiff's instruction No. 2 is based on the theory that he fell asleep.

The testimony concerning the alleged admission, in our opinion, should have been stricken from the record, unless Mugnano was defendant's agent at the time. Here the relationship of agency did not exist when the alleged statement was made. It was only in effect during the trip. Hence, *Reynolds* v. *W. T. Grant Company,* 117 W. Va. 615, 186 S. E. 603, cited by defendant's counsel, has no application.

We are of opinion that the peremptory instruction asked by defendant was properly refused. It was the contention of counsel that plaintiff's testimony and that of the representatives of the Department of Public Safety, clearly established contributory negligence on her part as a matter of law; that throughout the trip from Bayard to the scene

of the accident, she had permitted the driver to operate the automobile at a reckless rate of speed, to-wit, in excess of sixty miles per hour, without protest; and that the course of the car at the scene of the accident, as indicated by the conditions on the ground, substantiated such speed.

Plaintiff testified that on leaving Bayard, she admonished the driver to be careful; that after he got beyond Grafton on the way to Prunytown "he was not driving very fast"; and that when she first noticed the car "swerving" on coming into Pruntytown she braced herself and called the driver's attention to the swerving of the automobile. Her testimony in this regard, in our opinion, is not incredible so as to come within the rule of *Acree* v. *The Eureka Pipe Line Company,* 122 W. Va. 242, 8 S. E. 2d 186, and applying the rule in *Fielder, Admx.* v. *Service Cab Co.,* 122 W. Va. 522, 11 S. E. 2d 115, and *Boyce, Admx.* v. *Black,* 123 W. Va. 234, 15 S. E. 2d 588, it must be taken as true in view of the jury's verdict in plaintiff's favor. It follows that this Court cannot say as a matter of law that defendant's driver drove at a reckless rate of speed between Grafton and a point near where plaintiff was injured. Nor is defendant's contention that the automobile was driven at an excessive speed of sixty miles an hour from the time it left Bayard until it left the road at Pruntytown so thoroughly established by· this record that the circuit court should have held that plaintiff was guilty of contributory negligence, and directed the jury to so find. This contention is based upon the fact, established by the record, that the distance between Bayard and the place where plaintiff was injured, is sixty miles, and upon that part of the evidence which tends to show that the automobile left Bayard at 4:15 in the morning and arrived at Pruntytown at 5:15. But the jury was entitled to find that the automobile left Bayard at 4:05 and arrived at the place where it left the road at 5:25, and if so its average speed was forty-five miles an hour, which was not necessarily excessive under Code, 17-1-21, defining "Open Country highway", and Code, 17-8-18, subsection 4, establishing

forty-five miles an hour as the maximum speed limit on an open country highway for an automobile like the one in which plaintiff was riding. Moreover, in an action for negligence in the operation of an automobile the proper basis for the establishment of primary negligence is the speed and manner in which the automobile was being operated at the place the alleged negligence occurred, and not at some other point on the road. *Stone* v. *Rudolph,* 127 W. Va. 335, 32 S. E. 2d 742, 747. The jury, in our opinion, had the right to infer that the driver at the time and place where plaintiff was injured had lost control of the automobile; that it was then and there being driven at an excessive and reckless rate of speed; that from Grafton to Pruntytown the driver "was not driving very fast"; and that plaintiff exercised due care in promptly protesting when the automobile began to swerve. The evidence bearing on the question of contributory negligence is conflicting. Where in an action for personal injuries the probative evidence conflicts or inferences may reasonably be drawn either way from undisputed facts, the question whether a person is guilty of contributory negligence is for the jury. *Ewing* v. *Lanark Fuel Company,* 65 W. Va. 726, 65 S. E. 200, 29 L. R. A. (N. S.) 487.

The foregoing covers all of the assignments of error presented here. The case, in our opinion, should be reversed, the verdict set aside and a new trial awarded, because the circuit court's error in permitting plaintiff to testify concerning Mugnano's statement and in emphasizing that testimony through plaintiff's instruction No. 2 was, in our opinion, prejudicial error.

The judgment of the Circuit Court of Marion County is reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*