485 S.E.2d 1

STATE of West Virginia, Plaintiff
Below, Appellee

v.

Judy BROWNING, Defendant
Below, Appellant.

No. 23457.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 5, 1997.

Decided March 17, 1997.

418

M. Timothy Koontz, Williamson, for Appellant.

Scott E. Johnson, Senior Assistant Attorney General, Charleston, for Appellee.

Paul T. Farrell, Jr. and Chad S. Lovejoy, Legal Interns, Charleston.

MAYNARD, Justice:

The defendant below, appellant, Judy Browning, was charged with first-degree murder and shooting at a person in a public street for the shooting death of Lawrence Graham on May 30, 1993. Following a jury trial on June 21 to June 29, 1994, in the Circuit Court of Logan County, the defendant was found guilty of both charges, and sentenced to life in prison with mercy. On appeal to this Court, the defendant assigned seven errors seeking reversal of her conviction. For the reasons that follow, we affirm.

## I.

### FACTS

A sketch of the relevant facts are as follows. At approximately 3:35 a.m. on May 30, 1993, law enforcement officers responded to a shooting along State Route 10 in Logan County. The officers found the victim's red Jeep Comanche parked on the side of the road near a railroad crossing. The victim, Lawrence Graham, was lying dead on the roadside gravel beside the driver's door of his Jeep. A police investigation of the scene revealed blood on the ground and the Jeep, and an empty .22 caliber shell casing in the nearby weeds. An interview with a witness at the scene led law enforcement officers to suspect the defendant, Judy Browning, was involved in the murder. The defendant was ultimately arrested and charged with the murder.

At trial, the State's theory was that the defendant lured the victim, who was her boyfriend, to the spot along Route 10 in order to kill him because he had severed their rela-

tionship just when his divorce was being finalized. The Assistant State Medical Examiner testified that the victim died of a single gunshot wound to the right shoulder after the bullet perforated his aorta causing 40% of his total blood volume to drain into his chest. Although no one witnessed the defendant shoot the victim, five witnesses testified that they saw either the defendant or her vehicle at the murder scene within minutes of the victim's shooting. The victim's son testified that the victim told him the day before the murder that he (the victim) had argued with the defendant that day, and he had packed his clothes and left. The victim's widow testified that she and the victim had their final divorce hearing three days before the murder.

The defendant testified in her own behalf. She admitted she was with the victim just before he was shot, but denied that she had anything to do with the shooting. She testified that she and the victim were together at the roadside when an unidentified man appeared. Upon seeing this man, the victim told the defendant to leave. She testified that as she was about to drive away she heard a gunshot and saw the victim walk toward his truck, but she did not see him fall. The defendant also testified to an ongoing feud between the victim and his wife and children.

The trial concluded with the jury returning a verdict of first-degree murder and shooting at a person on a public street against the defendant. From these verdicts, the defendant appeals.

## II.

### DISCUSSION

In her appeal, the defendant raises several assignments of error: (1) whether the evidence was sufficient to support a verdict; (2) whether the trial court erred in instructing the jury that it could infer malice and intent from the use of a deadly weapon: (3) whether the trial court erred in admitting a hearsay statement that the defendant had a gun and carried it all the time; (4) whether the trial court erred in admitting the hearsay

statement of the victim that he and the defendant were breaking up; (5) whether the trial court erred in admitting evidence which had been unlawfully seized from the defendant's house; (6) whether the trial court erred in not allowing the defendant the right of allocution at sentencing; and (7) whether the accumulation of errors at trial requires a retrial.

### A

■ First, the defendant attempts to convince us that the record in this case does not support the verdict of first degree murder beyond a reasonable doubt.

■ Our authority in reviewing this issue is limited. We stated in Syllabus Point 1 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus the relevant inquiry is whether, after viewing the evidence in the light most favorable to prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Further,

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which

the jury could find guilt beyond a reasonable doubt.

*Id.*, Syllabus Point 3.

In this case, the jury found the defendant guilty based entirely on the weight of circumstantial evidence. We have recognized, however:

> Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. Nothing more should be required of a factfinder.

*Guthrie*, 194 W.Va. at 669, 461 S.E.2d at 175.

We find here that a rational trier of fact could have found the essential elements of first-degree murder beyond a reasonable doubt.[1] The elements of first-degree murder are an unlawful killing of another human being with malice, premeditation, and deliberation. *See*, W.Va.Code § 61-2-1 (1987).

Here, the State proved the victim was killed by a gunshot wound and the State medical examiner concluded the cause of death was the result of homicide. Five witnesses testified they saw either the defendant or her car at the murder scene between approximately 3:22 a.m. and 3:27 a.m. within moments of when the shooting occurred. Two of these witnesses recognized the defendant and another two saw a woman who matched the description of the defendant. Police testimony revealed the victim had been shot by 3:35 a.m. when they arrived on the scene. James Plymale testified that he was walking along the road, still some distance from the murder scene, when he heard a gunshot and saw the victim stagger and fall to the ground. Plymale further testified that he saw a woman matching the description of the defendant leave the murder scene immediately after the shooting. None of the five witnesses saw the unidentified man that the defendant spoke about in her testimony. Concerning motive, the victim's son testified that the day before the shooting, the victim told him that he [the victim] and the defen-

1. The defendant's brief does not address her con-      viction of shooting in a public street.

dant argued that day, and he packed his clothes and left.

A jury may infer malice and intent to kill from the use of a deadly weapon in circumstances not affording the defendant excuse, provocation, or justification. *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996). Also,

> [A] jury must consider the circumstances in which the killing occurred to determine whether it fits into the first degree category. Relevant factors include the relationship of the accused and the victim and its condition at the time of the homicide; whether plan or preparation existed either in terms of the type of weapon utilized or the place where the killing occurred; and the presence of a reason or motive to deliberately take life. No factor is controlling. Any one or all taken together may indicate actual reflection on the decision to kill. This is what our statute means by 'willful, deliberate and premeditated killing.'

*State v. Guthrie*, 194 W.Va. 657, 675, 461 S.E.2d 163, 181 n. 23 (1995).

Here, there is evidence the defendant persuaded the victim to accompany her to the roadside murder scene around 3:00 a.m. There was testimony that the defendant and the victim argued and the victim packed his clothes and left. Several witnesses saw the defendant at the murder scene within moments of the shooting. Based upon all of these circumstances, taken in a light most favorable to the state, we find that a rational trier of fact could have found the defendant guilty of first degree murder beyond a reasonable doubt.

## B

■ Second, the defendant claims that the trial court erroneously instructed the jury that it could infer malice and intent from the use of a deadly weapon.

State's instruction No. 3B states:

**2.** The instruction in *State v. Miller* stated:

The Court instructs the jury that in a prosecution for murder, if the State proves beyond a reasonable doubt that the defendant, without lawful justification, excuse or provocation,

The Court instructs the Jury that in a prosecution for murder, if the State proves beyond a reasonable doubt that the defendant, without lawful justification, excuse or provocation, shot the deceased with a firearm, then from such circumstances it may be inferred that the defendant acted with malice and the intent to kill.

The defendant notes that no instruction was given to the jury to the effect that such an inference was rebuttable, or that the jury could use other evidence to negate the inference of malice. The defendant argues that this instruction was an unconstitutional deviation from the requirement that the State prove every element of the crime beyond a reasonable doubt. Citing *Yates v. Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), and *State v. Jenkins*, 191 W.Va. 87, 443 S.E.2d 244 (1994).

The instruction in this case is very similar to the one in *State v. Miller*, 197 W.Va. 588, 606, 476 S.E.2d 535, 553 (1996).[2] There we stated:

> In general, the question on review of the sufficiency of jury instructions is whether the instructions as a whole were sufficient to inform the jury correctly of the particular law and the theory of defense. We ask whether: (1) the instructions adequately stated the law and provided the jury with an ample understanding of the law, (2) the instructions as a whole fairly and adequately treated the evidentiary issues and defenses raised by the parties, (3) the instructions were a correct statement of the law regarding the elements of the offense, and (4) the instructions meaningfully conveyed to the jury the correct burdens of proof. Thus, a jury instruction is erroneous if it has a reasonable potential to mislead the jury as to the correct legal principle or does not adequately inform the jury on the law.

*State v. Miller*, 197 W.Va. at 607, 476 S.E.2d at 554. We upheld the jury instruction in *Miller*. There we explained that in *Yates*,

fired a deadly weapon in the direction where a person was located then from such circumstances it may be inferred that the defendant acted with malice and the intent to kill.

the Supreme Court found a mandatory rebuttable presumption to be unconstitutional. In *Yates,* the instruction told the jury to presume malice either from an unlawful act, like a killing, or from the use of a deadly weapon, and the Supreme Court warned that we should not assume such unconstitutional instructions are harmless. *Yates,* 500 U.S. at 402, 111 S.Ct. at 1892–93, 114 L.Ed.2d at 448–49. We stated that such an impermissible instruction was not present in *Miller* because the instruction there did not mandate a presumption but merely allowed an inference if the jury did not find lawful justification, excuse, or provocation. Therefore, the instruction did not unconstitutionally shift the burden of proof. The same is true of the instruction before us here.

The defendant here also cites *State v. Jenkins* to support her argument that the jury instruction was improper. In *Miller* we explained that,

> [t]he reach of *Jenkins* can be limited to three salient points: (a) the use of a deadly weapon does not alone support an inference of 'premeditation and deliberation,' and, therefore, it is erroneous to instruct the jury that intent, wilfulness, deliberation, and premeditation may be inferred from the use of a deadly weapon 'where there is evidence that the defendant's actions were based on some legal excuse, justification, or provocation.' (b) '[a]n instruction which informs the jury that it may find the defendant guilty of first degree murder if it finds that he used a deadly weapon to kill the deceased unconstitutionally shifts the burden of proof.' (citation omitted); and (c) when an impermissible burden-shifting instruction is given, the error likely is not to be harmless. (citations omitted).

*Miller,* 197 W.Va. at 609, 476 S.E.2d at 556. We reach the same conclusion here that we did in *Miller.* In a murder case, an instruction that a jury may infer malice and the intent to kill where the State proves beyond a reasonable doubt that the defendant, without lawful justification, excuse or provocation, shot the victim with a firearm, does not unconstitutionally shift the burden of proof. Therefore, we find that the trial court did not err in giving this instruction.

### C

■ The defendant's next two assignments of error concern hearsay statements. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.Va. Rule of Evidence 801(c). In Syllabus Point 2 of *State v. Dillon,* 191 W.Va. 648, 447 S.E.2d 583 (1994), we stated:

> Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Hearsay is generally considered to be untrustworthy because the out-of-court declarant is not available to be immediately cross-examined concerning the accuracy of the statement. *See, State v. Phillips,* 194 W.Va. 569, 461 S.E.2d 75 (1995). Therefore, in criminal trials, hearsay presents the additional problem of conflicting with the defendant's constitutional guarantee of confronting adverse witnesses. We have recognized, however, that the untrustworthiness of hearsay statements is eliminated if the evidence fits within a firmly grounded hearsay exception. *State v. James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843 (1990). We have recognized that in addition to being admissible under our hearsay rules, the hearsay statement must also pass the relevancy tests of W.Va. Rules of Evidence 401 and 403.[3] With this in

---

3. W.Va. Rule of Evidence 401 states:

'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

W.Va. Rule of Evidence 403 states:

Although relevant, evidence may be excluded if its probative value is substantially out-

mind, we will now discuss the specific hearsay objections raised by the defendant.

■ First, the defendant claims that the trial court erred in admitting a hearsay statement that the defendant had a gun and carried it all the time.

During the State's rebuttal, the victim's brother testified concerning a conversation which occurred at a birthday party some eleven weeks prior to the victim's murder. The victim's brother had recently purchased a .357 Magnum handgun and showed it to the victim. The victim then invited the defendant to likewise handle the firearm. The defendant picked up the .357 Magnum and remarked that it was "heavy." The victim then turned to his brother and while in the immediate presence of the defendant, stated that he had purchased the defendant a smaller firearm, and that the defendant "carries it with her all the time." The defendant did not deny the truth of the victim's statement.[4]

The defendant asserts that the trial court improperly admitted this evidence under W.Va. Rule of Evidence 801(d)(2)(B) in that the statement must be one which is against the party's interest.[5] The defendant argues that because the statement is inadmissible hearsay, it is a violation of her Sixth Amendment right to confront witnesses against her. Also, the defendant maintains that the admission of the statement fails the relevancy requirement of W.Va. Rules of Evidence 402 and 403.[6]

■ As a preliminary matter, we note that,

[t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syllabus Point 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). "It is well settled that decisions regarding the admission and exclusion of evidence are peculiarly within the province of the trial court and are not to be reversed on appeal absent an abuse of discretion. Thus, evidentiary decisions of a trial court are entitled to substantial deference." *McDougal*, 193 W.Va. at 235, 455 S.E.2d at 794, n. 5.

■ W.Va. Rule of Evidence 801(d)(2)(B) provides that a statement is not hearsay if it is "a statement of which the party has manifested an adoption or belief in its truth." Such adoptive admissions are admissible as substantive evidence. *State v. Carrico*, 189 W.Va. 40, 427 S.E.2d 474 (1993). Although this Court has generally applied the rule in the context of an affirmative adoption of a statement made by another, (*see, e.g., Carrico*), we have also recognized that such an adoption of another person's statement can be manifested by silence. In *Mudd v. Cline*, 101 W.Va. 11, 13–14, 131 S.E. 865, 866 (1926), this Court stated, "[s]tatements made in the presence of another to which the latter does not reply are admissible against him as silent admissions when the statements are made under circumstances

---

weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

4. The trial court originally found this statement inadmissible because it was not timely disclosed to the defendant. The trial court ruled the State would be allowed to introduce it in rebuttal if the door was opened.

5. W.Va. Rule of Evidence 801(d)(2)(B) states:
(d) Statements which are not hearsay.—A statement is not hearsay if—(2) Admission by party-opponent.—The statement is offered against a party and is ... (B) a statement of which the party has manifested an adoption or belief it its truth ...

6. W.Va. Rule of Evidence 402 states:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible.

naturally calling for reply, if their truth is not intended to be admitted." We added that, "[t]his rule of evidence rests upon that universal principle of human conduct, which leads us to repel an unfounded imputation, or claim." *Cline,* 101 W.Va. at 14, 131 S.E. at 866. In *Reall v. Deiriggi,* 127 W.Va. 662, 34 S.E.2d 253 (1945) this Court articulated what must be present before a court can infer acquiescence from silence. "[I]t must not only appear that the language used was fully understood by him, but also that the circumstances were such as afforded him an opportunity to speak, and such would properly and naturally call for some reply from a person similarly situated." [7] *Reall,* 127 W.Va. at 668, 34 S.E.2d at 256. In addition, in *Reall* we held that the defendant must have knowledge regarding the truth or falsity of a statement before he can be considered to have adopted the statement by his silence. *Id.* Here, there is no dispute whether the defendant understood the statement, had an opportunity to speak, or had knowledge of the truth or falsity of the statement. Rather, the issue is whether, under the circumstances in which the statement was made, the defendant's silence following the statement demonstrated that she believed the statement to be true. The defendant argues that for such a statement to naturally provoke a denial, it must be one that was against the party's interest at the time it was made. In *State v. Howerton,* 174 W.Va. 801, 807, 329 S.E.2d 874, 880 (1985) we referred to "a tacit admission by silence where some accusation is made in the presence of and directed at the defendant which would ordinarily call for a denial or a response and the defendant remains silent", but we contrasted this with an adoptive admission "where the party by words *or conduct* signifies his acquiescence or approval of an out-of-court statement." (Emphasis added). The facts in the case before us appear to fall under the latter category. When a party adopts a statement by silence, in order to be admissible, the statement does not have to be accusatory or against the party's interest at the time it was made, but one that would naturally call for a reply if the truth of the statement was not intended to be admitted. According to this standard, we cannot say that the trial court abused its discretion in admitting the statement at issue. Because we find that the statement is an adoptive admission under Rule 801(d)(2)(B), its admission did not violate the defendant's Sixth Amendment right to confront witnesses against her.

We also disagree with the defendant that the statement fails the relevancy requirement of W.Va. Rule of Evidence 402, and that it should have been excluded under W.Va. Rule of Evidence 403. Here, the adoptive admission was not admitted during the State's case-in-chief but only after the defendant testified that she did not carry a gun. The defendant's admission that she always carried a gun is relevant to impeach her testimony to the contrary. Therefore, we find that the trial court did not abuse its discretion in admitting the defendant's statement.

### D

The defendant also argues that the trial court erred in admitting the hearsay statement of the victim that he and the defendant were breaking up.

During the State's case-in-chief, the victim's son testified regarding a statement the victim made to him the day before his murder. The victim told his son that he had an "argument" with the defendant and "packed his clothes and left." During a pre-trial hearing, the defendant objected to this testimony, asserting ". . . it is hearsay. I have had no notice whatsoever of the State's intent to use any hearsay of the decedent." The State contended that the statement was admissible under W.Va. Rule of Evidence 803(3), which does not require a disclosure notice.[8] The trial court ruled, "[o]ver the

---

7. Obviously, *Mudd v. Cline* and *Reall v. Deiriggi* were decided before the W.Va. Rules of Evidence were adopted. However, the law articulated in these cases is not inconsistent with W.Va. Rule of Evidence 801(d)(2)(B). Therefore, they remain a "source of guidance" on evidentiary matters.

*Reed v. Wimmer,* 195 W.Va. 199, 205, 465 S.E.2d 199, 205 (1995).

8. W.Va. Rule of Evidence 803(3) states:

defendant's objection I'll allow that testimony. I believe its very probative on the issue of motive."

On appeal, the defendant argues that it was prejudicial error to admit the testimony because the state of mind of the victim was not relevant to the issue before the jury, and cites *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995). The State responds that the defendant waived appellate review because she did not object at trial on the grounds she is raising on appeal. Alternatively, the State urges us to overrule *State v. Phillips*.

■ First, we agree with the State that the defendant waived appellate review of this issue. As noted above, the defendant's specific objection to this evidence was that she had not received prior notice. It is noteworthy that even when the dialogue between the State and the trial court focused on this evidence as being admissible under Rule 803(3), and the trial court concluded that it was probative on the issue of motive, defendant's counsel not only said nothing concerning the issue now raised, but said nothing at all. W.Va. Rule of Evidence 103(a)(1) states that:

(1) Objection—In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, *stating the specific ground of objection*, if the specific ground was not apparent from the context. (emphasis added).

This Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record. *See, Bennett v. 3 C Coal Co.*, 180 W.Va. 665, 379 S.E.2d 388 (1989).

To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect. The rule in West Virginia is that parties must speak clearly in the circuit court on pain that, if they forget their lines, they will likely be bound forever to hold their peace . . . it must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.

*State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996).

The trial court here was never alerted to the defendant's argument that Rule 803(3) is not relevant because the declarant's state of mind was not in issue, and, therefore, never had an opportunity to consider the defendant's argument.[9] Therefore, we find that the defendant waived appellate review of this issue.

■ We also find, however, that the victim's statement was properly admitted under Rule 803(3). We decline to overrule *Phillips*, but distinguish it from the case at hand.

In *Phillips*, the defendant was a husband accused of murdering his wife. He claimed her death was caused by an accidental shooting in their home after he returned from a hunting trip. At trial, the State introduced hearsay statements from the victim which indicated she had discovered her husband's infidelity and wanted to divorce him. The trial court admitted the evidence under W.Va. Rules of Evidence 803(1), present sense impression, and/or 803(3), state of mind. On appeal, the defendant argued, in relevant part, that these statements did not qualify under Rule 803(3) because the wife's state of mind was not an issue in the case. This Court found that the use of the state-

---

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(3) Then existing mental, emotional, or physical condition.—A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revo-

cation, identification, or terms of declarant's will.

9. We are aware that *State v. Phillips*, relied on heavily by the defendant in her brief to this Court, had not been decided at the time of trial, so obviously was unavailable to her. The defendant could have, however, advanced her basic argument here that 803(3) was inapplicable to the facts of this case because the declarant's state of mind was not at issue.

ments under Rule 803(3) was error because "[t]he contention that the testimony was relevant to prove motive is too tenuous." *Phillips*, 194 W.Va. at 584, 461 S.E.2d at 90. We stated also,

> [a]lthough the declarant's state of mind does not have to be directly in issue for the statement to be admissible under Rule 803(3), where a statement is introduced to show the declarant subsequently acted in compliance with this state of mind, the state of mind must be relevant.

*Id.*

In *Phillips*, the hearsay was introduced in the testimony of four witnesses. Two of the witnesses testified that the victim told them, "she was at her wits end, and she wanted to get a divorce, and the victim wanted half of the marital assets ..." We noted that neither of these witnesses admitted at trial that the victim planned to confront the defendant. *Phillips*, 194 W.Va. at 582, 461 S.E.2d at 88. These statements were made by the victim on February 9, 1991 and the victim was killed on April 29, 1991. Another witness testified that the victim told her the defendant "hadn't touched her physically since she came back from Hawaii ... [and that] [i]n fact she said he hadn't made love to her[.]" *Id.* It is unclear when this statement was made. The fourth witness testified that three days before the shooting, the victim told her she had found a receipt for an expensive ring "and that she [the victim] was going to try to find out who it was purchased for. And if she did find out, and could get evidence, I guess, then she was going to file for a divorce." *Phillips*, 194 W.Va. at 583, 461 S.E.2d at 89.

The admission of these statements under Rule 803(3) was problematic for several reasons. First, the statements evidencing an intent to file for divorce took place more than two months before the shooting occurred. Also, there was no evidence the victim actually informed the defendant of her intent. Only after the victim informed the defendant of her intent, does her state of mind become probative of the defendant's motive. Otherwise, using such statements to prove that the victim informed the defendant of her intent, and as a result, the defendant had the motive to commit murder is fraught with special

perils. *See, Phillips*, 194 W.Va. at 584, 461 S.E.2d at 90, n. 21. The second statement indicated no intent whatsoever on the part of the victim that could be probative on the issue of the defendant's motive. The third statement, concerning finding the ring, merely manifested the victim's intent to find out for whom the ring was purchased. Standing alone, this also has no value on the issue of the defendant's motive. If the issue had been the victim's motive or intent, some of these statements would have been relevant. However, as we stated before, such testimony was too tenuous to be probative on the issue of the defendant's motive.

In the case before us, however, the victim's statement was made on the day before the shooting. Further, the statement was not one of intent, but that the victim and the defendant had already argued. Unlike in *Phillips*, the evidence here was not too tenuous to prove motive. We caution against expanding *Phillips* to apply to all statements admissible under Rule 803(3) for the purpose of proving motive in some one other than the declarant. This case illustrates that some such statements have great probative value in determining motive in others beside the declarant, and should not be automatically excluded from that purpose. We find, therefore, that the trial court did not abuse its discretion in admitting the statement of the victim under Rule 803(3) as probative evidence on the issue of the defendant's motive.

### E

█ The defendant claims also that the trial court erroneously admitted evidence which had been unlawfully seized from the defendant's house.

Pursuant to a search warrant, police officers searched the defendant's home and seized four handwritten notes that were addressed to the victim. The trial court prohibited the State from introducing in its case-in-chief any evidence seized as a result of the warrant. During the trial, the defendant took the stand in her own defense. On cross-examination, the defendant stated that she did not recall ever breaking up with the victim. The trial court then allowed the State to introduce the four handwritten notes

for impeachment purposes as prior inconsistent statements under W.Va. Rule of Evidence 613(b).[10] These statements were introduced as Exhibits 9, 10, 11, and 12 and are as follows:

Ex. 9

Lawrence,

We didn't have a chance. There was to [sic] many people that didn't want us together. The only way we could have made it, was to stay away from them, and stay

Ex. 10

Lawrence,

I loved you so much that I would have died for you

Ex. 11

Lawrence,

The hardest part now is trying not to *want you* so much. I loved you so much that I would have died for you. That's what hurts me now when you say you can't take sides. Whose side did I take when you needed someone? Everybody should be happy now. Don't you understand (open your eyes) This is what they have been working on, to break us up.

Ex. 12

Lawrence,

Maybe I can put down on paper what I can't say in person. I get so mad when I try to talk to you. You said you didn't want to take sides, well whose side did I take when you needed someone. You have to stop and think about what has happened and who was there for you and loved you. I could not get you to do anything that I though [sic] was best for you, but if Laurice called you would do anything she wanted.

The defendant agrees that illegally seized evidence may be used for impeachment purposes, but asserts that the notes were not inconsistent with the defendant's testimony because they are ambiguous and do not actu-

ally contradict statements made by the defendant.

"[E]ven under the exclusionary rule, evidence illegally obtained is admissible when used solely to impeach the defendant's testimony at trial." *State ex rel. State Farm Fire v. Madden,* 192 W.Va. 155, 163, 451 S.E.2d 721, 729, n. 10 (1994). In Syllabus Point 1 of *State v. Blake,* 197 W.Va. 700, 478 S.E.2d 550 (1996), we stated that "before admission at trial of a prior inconsistent statement allegedly made by a witness ... [t]he statement actually must be inconsistent, but there is no requirement that the statement be diametrically opposed." West Virginia is in accord with the weight of authority on the requirements of inconsistent statements as it has developed from common law. *See People v. Wise,* 46 N.Y.2d 321, 413 N.Y.S.2d 334, 385 N.E.2d 1262, 1265 (1978) ("From earliest common-law days, a prior statement was admissible for impeachment purposes even though it did not directly contradict the witness testimony.")

We disagree with the defendant that the prior inconsistent statement exception applies only to evidence which actually contradicts a statement made by the defendant, and reiterate that the statement need only be inconsistent. In light of this standard, we find that the trial court did not abuse its discretion in finding that the handwritten notes were inconsistent with the defendant's testimony. The record reveals that the defendant testified three separate times that she and the victim had never "broken up." Her handwritten notes, on the other hand, appear to indicate the contrary. At one point, the defendant wrote, "... everybody should be happy now ... this is what they had been working for, to break us up." Because the language of the notes seem to indicate that the defendant and the victim had "broken up" at some point, contrary to the defendant's clear testimony, we find that the trial court did not abuse its discretion in

---

**10.** W.Va. Rule of Evidence 613 states:

(b) *Extrinsic evidence of prior inconsistent statement of witness.*—Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined by Rule 801(d)(2).

allowing the admission of these notes for impeachment purposes.

### F

Next, the defendant asserts that the trial court erred in failing to allow her the right of allocution at sentencing.

We agree with the defendant that Rule 32(a)(1) of the W.Va. Rules of Criminal Procedure requires the court to allow the defendant and her counsel the opportunity to speak on her behalf before the sentence is imposed.[11] However, the record clearly shows that the trial court did permit the defendant to speak prior to sentencing. Page five of the October 4, 1995 Sentencing Hearing transcript contains the following:

> The Court: Mr. Koontz, does defense counsel have anything to say?
>
> Mr. Koontz: The defendant has a few words she'd like to say on her own behalf, your Honor.
>
> The Court: Ms. Browning?
>
> Defendant: Judge O'Briant, I got caught in the cross-fire of domestic abuse. Until the court understands abuse, there's not going to be anything done about it. I was only trying to help. He asked me to help him. I tried. I'm sorry he's gone, too, because I love him, too.

Therefore, we find that the defendant did receive the right of allocution prior to sentencing.

### G

Finally, the defendant asserts that the accumulation of errors at trial requires a retrial. "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syllabus Point 5, *State v. Walker*, 156 W.Va. 385, 425 S.E.2d 616 (1992). However, because we find no "harmless errors" here, the cumulative error doctrine is inappropriate.

### III.

### Conclusion

For the foregoing reasons, the judgment of the Circuit Court of Logan county is affirmed.

Affirmed.

---

11. This rule, known as the right of "allocution" states in part:

    (a) *Sentence.*—(1) Imposition of Sentence.— Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall (B) afford counsel an opportunity to speak on behalf of the defendant; and (C) shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.