STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

November 23, 2015
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

*In re*: **L.P.-1, R.P., J.P. Jr., N.P., I.P., & L.P.-2,**

**No. 15-0638** (Mingo County 14-JA-108, 14-JA-109, 14-JA-110, 14-JA-111, 14-JA-112, & 14-JA-113)

## MEMORANDUM DECISION

Petitioner Mother S.P., by counsel Jerry M. Lyall, appeals the Circuit Court of Mingo County's May 29, 2015, order terminating her parental rights to fifteen-year-old L.P.-1, fourteen-year-old R.P., twelve-year-old J.P. Jr., eleven-year-old N.P., nine-year-old I.P., and six-year-old L.P.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Susan J. Van Zant, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) finding that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future based on the evidence presented; (2) denying petitioner post-termination visitation with the children; (3) "apparently adopting" the DHHR's determination that this case constituted "aggravated circumstances"; and (4) agreeing to the DHHR's position that the goal for this case was termination and not reunification between petitioner and the children.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2014, the DHHR filed an abuse and neglect petition against petitioner alleging that she neglected her children by failing to protect them from the physical abuse of her live-in boyfriend. The DHHR claimed that one of the children reported that petitioner's

---

[1]Because two of the children share the same initials, we have distinguished them using numbers 1 and 2. The Circuit Court of Mingo County's case numbers also serve the distinguish them.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

boyfriend grabbed her by the throat, choked her, has a "bad temper," slapped another child, made at least one child drink "pickle juice" as punishment, and generally made the children feel unsafe. As to petitioner, the DHHR alleged in the petition that she admitted her knowledge of this physical abuse but claimed to be too afraid to stop him. According to the DHHR, petitioner filed a petition for an emergency protective order ("EPO") for the children in October of 2014 based on the physical abuse, but, at the subsequent hearing on that petition, she recanted and claimed her contentions against her boyfriend were not true. The DHHR further asserted that her boyfriend was back in her home with the children by November 10, 2014. The DHHR further alleged that, when petitioner or her boyfriend determined that a child's room was "dirty," that child was given only crackers to eat and water to drink.

Soon thereafter, the circuit court held a preliminary hearing. At that hearing, the circuit court found that petitioner had been a party to and received services in prior abuse and neglect proceedings, which included periods of parental improvement and prior allegations of domestic violence with men other than her then-boyfriend;[3] that all of the children disclosed physical abuse by petitioner's boyfriend; and that prior to filing the underlying petition, the DHHR and petitioner agreed to an in-home protection plan in order to prevent her boyfriend from being around the children but petitioner violated that plan by permitting him to return to the home. The court found probable cause for removal of the children and set the matter for adjudication.

Between December of 2014 and February of 2015, the circuit court held several adjudicatory hearings to complete in-camera review of interviews conducted with the children. At the conclusion of these hearings, the circuit court found that "the children revealed horrible abuse at the hands of [petitioner's boyfriend]"; that petitioner neglected the children by failing to protect them from such abuse; and that it was in the children's best interests to remain in the DHHR's custody pending a dispositional hearing. The circuit court also denied visitation for petitioner or her boyfriend.

In March of 2015, the circuit court held a dispositional hearing. At the outset, petitioner stated that she had not completed her psychological evaluation due to her need to attend a court

---

[3]The DHHR pursued abuse and neglect actions against petitioner on two prior occasions—2001 and 2008—but it is unclear whether the 2001 investigation resulted in the filing of an abuse and neglect petition against petitioner. Throughout this memorandum decision, we consider only the evidence presented below as reflected in the record on appeal. Based on the record before us, it appears that in 2001 and extending into 2002, there were allegations against petitioner of domestic violence, sexual abuse, mental health issues, and failure to provide appropriate medical care for at least one of the children (several of the children were born after 2002). She retained custody of her children following the 2001 and 2002 allegations. Thereafter, in 2008, there were additional allegations against petitioner (and the children's father) of domestic violence, which resulted in the DHHR filing an abuse and neglect petition. It appears that, at that time, petitioner obtained a domestic violence order against the children's father, but later had the same dismissed. Ultimately, in the 2008 proceeding, the children's father's parental rights were terminated and the children were returned to petitioner. As noted by the guardian, petitioner spent significant time during those timeframes in services related to domestic violence issues and other aspects of parental improvement.

hearing that apparently conflicted with her evaluation time. When asked by the circuit court whether she wished to proceed, she answered that she did. At that hearing, a Child Protective Services ("CPS") worker testified that petitioner failed to recognize any wrongdoing on her part and that she failed to protect the children and demonstrated other at-risk behaviors that endanger the children. The CPS worker further testified that no services could correct the problems demonstrated by petitioner. Ultimately, the circuit court found that petitioner failed to protect the children from the emotional and physical abuse of her boyfriend and that she participated in other at-risk behaviors that endangered the children, such as developing and maintaining relationships with abusive men. Importantly, the circuit court found that petitioner failed to recognize any wrongdoing and was unlikely to protect each child from further abuse in the future. Finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect in the near future and that the children's welfare required termination, the circuit court terminated petitioner's parental rights to the children. The circuit court denied petitioner post-termination visitation with the children. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law is clear that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); se*e also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

On appeal, petitioner's first assignment of error is that the circuit court erred in finding that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future. West Virginia Code § 49-6-5(a)(6) requires circuit courts to terminate the parental rights of a respondent parent "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child[.]" West Virginia Code § 49-6-

5(b)(3) provides that "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" exists when a respondent parent fails to respond or follow through with a reasonable family case plan or other rehabilitative efforts.

In this case, the circuit court found that it was unlikely that petitioner would protect each of her children from abuse in the future and that she failed to recognize any wrongdoing in her behavior. It is clear from the record on appeal that the circuit court heard evidence to support these findings from the CPS worker who testified at the dispositional hearing. Further, while petitioner argues that she "has provided adequately for her children's needs since November 2009[,]" it is clear from her failure to protect these children from her boyfriend's continued abuse that she has not "provided adequately" for the children's safety. Petitioner demonstrated a prolonged history of domestic violence. She previously completed services with the DHHR to learn how to properly parent her children. Notably, however, after undergoing those prior services, she had her petition for an EPO against her abusive boyfriend dismissed and welcomed him back into her home. These actions clearly amount to a failure to respond to rehabilitative efforts. Based on the circumstances of this case, we find no merit to petitioner's first assignment of error.

Petitioner next argues that the circuit court erred in denying her post-termination visitation. We have held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). We have also held that the word "may" is permissive and connotes discretion. *See Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher*, 174 W.Va. 618, 626 n. 12, 328 S.E.2d 492, 500 n. 12 (1985) (providing that "[a]n elementary principle of statutory construction is that the word 'may' is inherently permissive in nature and connotes discretion.") (citations omitted). In the case sub judice, while petitioner argues that post-termination visitation was required due to her bond with the children and the children's wishes, those factors alone do not warrant the granting of post-termination visitation in every circumstance. Based on the underlying acts of physical abuse at issue, petitioner's failure to protect the children against that abuse despite her knowledge of the same, and the children's need for permanency, we find that the circuit court did not abuse its discretion in denying petitioner's motion.

Petitioner's remaining two assignments of error are that the circuit court erred in adopting the DHHR's determination that this case constituted "aggravated circumstances" and in "agreeing" with the DHHR's position that the goal in this case was termination and not

reunification. However, petitioner fails to indicate where in the record the circuit court found that "aggravated circumstances" applied to this case and where in the record the circuit court agreed that termination was a predetermined goal here. She further fails to cite to any motion or objection on these grounds in the record on appeal. Rule 10(c)(7) of the Rules of Appellate Procedure clearly provides that a petitioner's brief to this Court

> must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

We have also held that we "will not consider an error which is not properly preserved in the record nor apparent on the face of the record." Syl. Pt. 4, *State v. Browning*, 199 W.Va. 417, 485 S.E.2d 1 (1997); *see also State v. Larry A.H.*, 230 W.Va. 709, 716, 742 S.E.2d 125, 132 (2013) (stating that "[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment."). As petitioner points to no portion of the record on appeal to support these claims, and based upon our review of the record on appeal and arguments of the parties, we decline to find reversible error on petitioner's remaining two assignments of error.

For the foregoing reasons, we find no error in the circuit court's May 29, 2015, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: November 23, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II