**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **D.R.**

**No. 25-355** (Monongalia County CC-31-2023-JA-221)


**MEMORANDUM DECISION**


Petitioner Mother N.W.[1] appeals the Circuit Court of Monongalia County's April 25, 2025, order terminating her parental, custodial, and guardianship rights to D.R., arguing that the circuit court erred by denying her motion for a post-dispositional improvement period and finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

On December 4, 2023, the DHS filed a petition alleging that the petitioner was involved in a prior proceeding that resulted in the termination of her parental rights to seven other children via her voluntary relinquishment in October 2023. The petitioner denied being pregnant at the dispositional hearing; however, on November 29, 2023, she gave birth to D.R. The DHS further alleged that the petitioner tested positive for cocaine in July and August 2023 while pregnant. A DHS worker spoke to the petitioner at the hospital where she gave birth and she admitted that she lied to the court about her pregnancy but insisted that the two drug screens were false positives. Despite the petitioner's claims of sobriety while pregnant, the child required "two rescue doses" of morphine, which was indicative of the petitioner's substance use. As such, the DHS alleged that the petitioner abused and neglected the child by abusing substances while pregnant and failing to address the issues of abuse and neglect that led to her prior terminations, specifically domestic violence and emotional abuse.

At a December 15, 2023, preliminary hearing, the petitioner testified, admitting that she lied to the court about her pregnancy in the prior proceeding. The court found that probable cause existed to believe the child was at risk of imminent danger, ratified the child's removal, and ordered that the petitioner begin random blood and urine drug screens. Thereafter, the DHS filed an amended petition detailing the extensive services provided to the petitioner in the prior proceeding

---

[1] The petitioner appears by counsel Christine Schneider. The West Virginia Department of Human Services ("DHS") appears by Attorney General John B. McCuskey and Assistant Attorney General A. Tyler Reseter. Counsel Teresa J. Lyons appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

and explaining that the court accepted the petitioner's voluntary relinquishment over the DHS's objection. The DHS alleged that the petitioner abused and neglected the child by failing to address the issues of domestic violence and emotional abuse that caused the termination of her parental rights to seven other children.

In January 2024, the court held an adjudicatory hearing at which the petitioner stipulated to abusing substances during her pregnancy and that she voluntarily relinquished her parental rights in the prior proceeding. Accordingly, the court adjudicated her of abusing and neglecting the child. The petitioner moved for a post-adjudicatory improvement period, and the court granted the same, the terms of which included participating in all multidisciplinary team meetings, submitting to random drug screens, and attending parenting and adult life skills services. At a review hearing in August 2024, the court granted the petitioner's request for a three-month extension of her post-adjudicatory improvement period.

In December 2024, the petitioner filed a written motion requesting a post-dispositional improvement period. Then, in January and February 2025, the court held four dispositional hearings at which several witnesses testified, including the petitioner. She acknowledged her involvement in a prior abuse and neglect proceeding concerning issues of domestic violence and drug abuse, which led to the voluntary termination of her parental rights to seven children. The petitioner insisted that the child's father did not abuse or neglect her older children and that she did not believe the older children. The petitioner presented many witnesses who testified to her participation in services and her overall suitability as a parent. However, the petitioner testified a second time at the last dispositional hearing, denying any substance abuse while pregnant—the very issue to which she previously stipulated. In the resulting dispositional order, the court expressed grave concern that the petitioner lied under oath about her pregnancy and opined that she would "go to *any* length to hide any negative situation, interaction, relationship, or life choice from those who are tasked with protecting her children." The court found that the petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help, failed to address the issues that led to the filing of the petition, and did not respond to rehabilitative efforts. Critically, the court explained that the petitioner continued to deny that she abused substances during her pregnancy, despite her adjudication for this issue, and failed to make "meaningful change in her life and decision-making that would allow her to safety parent her [child]," despite her participation in DHS services. Thus, the court found that the petitioner did not demonstrate a change in circumstances rendering her likely to participate in another improvement period, especially given her failure to acknowledge her drug abuse. Ultimately, the court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was in the child's best interest given his need for continuity of care and caretakers. Accordingly, the court terminated the petitioner's parental, custodial, and guardianship rights. It is from this order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re*

---

[3] The father's parental rights were also terminated. The permanency plan for the child is adoption in the current placement.

*Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that she corrected the conditions of abuse and neglect for which she was adjudicated and was "entitled to a post-dispositional improvement period." Thus, she asserts that the circuit court erred by denying her motion for the same. However, to receive a post-dispositional improvement period, the respondent parent must "demonstrate[], by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." W. Va. Code § 49-4-610(3)(B). If a respondent parent has already been granted an improvement period, as is the case here, the parent is also charged with "demonstrat[ing] that since the initial improvement period, the [parent] has experienced a substantial change in circumstances" that renders the parent likely to fully participate. *Id.* § 610(3)(D). Critically, we have explained that "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged" because a parent's failure to acknowledge the problem "results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Here, while the petitioner stipulated to abusing substances while pregnant and participated in an extended improvement period designed to assist her in remedying the problem, she testified *at the final dispositional hearing* that she never abused substances while pregnant. Accordingly, the court found that the petitioner failed to acknowledge the problem and failed to demonstrate a change in circumstances that rendered her likely to participate in a further improvement period. Thus, the court committed no error in denying her motion for the same.

The petitioner also argues that circuit court erred in terminating her parental, custodial, and guardianship rights. In support, she asserts that her prior voluntary relinquishment of her parental rights to seven other children does not constitute aggravated circumstances and "should not be the basis for a termination of parental rights." However, this argument is immaterial because termination is appropriate when "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and, when necessary for the child's welfare. W. Va. Code § 49-4-604(c)(6). There is no such likelihood when a parent has "not responded to or followed through with a reasonable family case plan or other rehabilitative efforts." *Id.* § 604(d)(3). Here, the court found that the petitioner gained nothing from the rehabilitative services provided to her. Moreover, the petitioner rendered the problems untreatable by failing to acknowledge the abuse and neglect she inflicted upon her child, as demonstrated by her testimony that she never abused drugs while pregnant. *See In re Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363 (explaining that a parent must recognize and acknowledge their abusive and neglectful conduct in order to remedy the problem). Furthermore, despite the petitioner's unsupported assertion otherwise, termination of the petitioner's rights was necessary for the child's welfare. The court found that the child needed continuity of care and caretakers, especially given his age and attendant need for "consistent close interaction with fully committed adults." Thus, the circuit court did not err.[4]

---

[4] The petitioner further argues that "[n]o foundation or Daubert-style analysis was performed to determine whether [a Child Protective Services ("CPS") worker] has the requisite qualifications to render an opinion on whether [the petitioner] ha[d] the parental capacity to be a fit parent." However, the petitioner fails to "pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." W. Va. R. App. P. 10(c)(7); *see* Syl. Pt. 4, in part, *State v. Browning*, 199 W. Va. 417, 485 S.E.2d 1 (1997) ("This Court will not consider an error

3

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 25, 2025, order is hereby affirmed.

Affirmed.

ISSUED: March 24, 2026

CONCURRED IN BY:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

which is not properly preserved in the record . . . .”). In fact, nothing in the transcript indicates that any party attempted to qualify the CPS worker as an expert witness nor did the petitioner advance any objection to the CPS worker's testimony at the hearing.

The petitioner also baldly argues that the court's denial of post-termination visitation was erroneous but fails to provide any authority or perform any analysis regarding the issue and we will not consider it. *See* W. Va. R. App. P. 10(c)(7) (allowing this Court to disregard errors that are not supported by "an argument clearly exhibiting the points of fact and law presented").

The petitioner briefly argues that the circuit court ignored evidence of the petitioner's efforts to improve. However, "weigh[ing] evidence . . . is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). We will not reweigh evidence on appeal, and the petitioner is entitled to no relief in this regard.